1998 OK CIV APP 103

**STATE of Oklahoma, Appellee,**

v.

**Peter J. McMAHON, Jr., Appellant.**

**No. 87385.**

Court of Civil Appeals of Oklahoma, Division No. 4.

May 12, 1998.

Certiorari Denied July 8, 1998.

John E. Dorman, Senior Assistant City Attorney, Tulsa, for Appellees Police Department and City of Tulsa.

Rob Gallant, Assistant District Attorney, Tulsa, for Appellees District Attorney and Sheriff.

Janet Halliburton, Cheif Legal Counsel, Michelle Lindo, Legal Intern Oklahoma

State Bureau of Investigation Oklahoma City, for Appellee OSBI.

Peter J. McMahon, Jr., Florence, for Appellant pro se.

REIF, Judge.

Peter Joseph McMahon, Jr., appeals the denial of his application for the expungement of certain court and arrest records. The application listed multiple case numbers and alleged that he "was acquitted, or the charges were dismissed within one year after the arrest." Expungement is authorized in such circumstances by 22 O.S.1991 §§ 18 and 19.

A hearing was set and notice was given to the district attorney of Tulsa County, the Tulsa Police Department (the arresting agency), and the Oklahoma State Bureau of Investigation. These agencies all opposed expungement on the ground that Mr. McMahon was a "career criminal" with multiple felony convictions. Mr. McMahon asked for a continuance of the hearing in order to file a response. The trial court denied the motion for continuance and held the hearing as previously set. Mr. McMahon did not attend the hearing due to his incarceration in a federal penitentiary.

At the hearing, the trial court inquired about the cases listed by Mr. McMahon and verified their dismissal. However, the trial court concluded that the public interest favored maintaining these records as public. On appeal, Mr. McMahon contends that the trial court committed reversible error by (1) not granting the continuance; (2) proceeding ex parte; (3) deciding a matter in which the judge had a bias; and, (4) ruling without taking evidence. We reject these assignments of error and affirm.

The procedure prescribed for obtaining or opposing expungement is almost summary in nature and the issues are very narrow in scope. The procedure includes (1) the filing of a motion or petition; (2) notice to the district attorney, the arresting agency, the Oklahoma State Bureau of Investigation, and any other interested person or agency; and, (3) hearing of the petition and objections from the agencies notified. 22 O.S.1991 § 19. No response to an objection is provided. The focus of the petition, objections, and hearing is on *records* kept by authority of law. Those records presumptively serve the public interest. However, the legislature has recognized that, in the circumstances enumerated in section 18, such records pose a potential of "harm to the privacy of the person in interest or dangers of unwarranted adverse consequences." When one of these circumstances is shown to exist, a prima facie showing of harm is made. The burden then shifts to the agencies opposing expungement to show that keeping such records public does not harm privacy interests and would serve the ends of justice. To assess what the ends of justice require, the court is to balance the harm to privacy or other unwarranted adverse consequences to the individual against the public interest in the records. If the court is not convinced that the ends of justice are served by either expungement or keeping the records public, the court can fashion a remedy of limited access.

The record reflects that the trial court followed the statutory procedure and fully examined the court records that were placed in issue by Mr. McMahon's application. The record further reflects that the cases he tendered for review had been dismissed within one year of arrest and a prima facie case for expungement was established. Clearly, the lack of an opportunity to respond to the objections to expungement did not impair Mr. McMahon in meeting the burden cast upon him.

The record also reflects, however, that agencies opposing expungement likewise met their burden to show that keeping the court and arrest records of the dismissed cases public (1) would not harm Mr. McMahon's privacy interests and (2) would serve the ends of justice. It is sufficient to note that relevant records of Mr. McMahon's criminal history were presented by the custodial agencies opposing expungement. These records reveal a long, extensive involvement in crime, including numerous felony convictions. There can be virtually no harm to Mr. McMahon's privacy interests vis-a-vis his involvement in crime by allowing public access to the court and arrest records of the dismissed cases. Additionally, the ends of justice are served by keeping the "dismissed case" records public. The danger that "ca-

reer criminals" pose to the community alone warrants the maintenance of complete public records concerning their involvement in crime. Clearly, the trial court had sufficient evidentiary basis for its ruling.

■ Obviously, a hearing is an important part of the expungement procedure set forth in 22 O.S.1991 §§ 18 and 19. We again stress, however, that the focus of the hearing in cases like the instant case is on the records tendered for review by the application and the objections. Because the records in the instant case sufficiently speak for themselves and are so completely dispositive of the issues, it is unlikely that the presence of counsel for the objecting agencies produced any advantage in their favor or the absence of Mr. McMahon worked any prejudice against him. Additionally, a hearing with counsel for the objecting agencies present and without Mr. McMahon is not necessarily an ex parte hearing. An incarcerated applicant for expungement (like Mr. McMahon), who does not make reasonable efforts to secure his appearance at the hearing, waives his appearance. In such cases, the trial court may properly decide the application in his absence.

■ Furthermore, the record does not reflect bias on the part of the trial judge. To the contrary, the record reflects that the trial judge displayed complete impartiality and undertook the review of the court records tendered by Mr. McMahon with commendable thoroughness. An example of the court's fairness and diligence is reflected in the special inquiry that the court made concerning the "D" number records that no one could identify. The record also reflects that the court took Mr. McMahon's application seriously and showed respect for his legal ability in presenting the matter to the court.

Lastly, the fact that the judge had been an assistant district attorney is insufficient to impute bias to him in deciding the matter.

The plain purpose of sections 18 and 19 is to afford special relief in the form of a full or partial sealing of records relating to a person's involvement or suspected involvement in a crime. It is clearly intended to aid those who are acquitted, exonerated, or who otherwise deserve a second chance at a "clean record." It is doubtful that the legislature intended expungement to be used by "career criminals" to conceal or withdraw portions of their criminal record from law enforcement and the public, or to improve their evaluation status while under incarceration.

The trial court is AFFIRMED.[1]

STUBBLEFIELD, P.J., and RAPP, J., concur.

---

1. The objecting agencies questioned the jurisdiction of the Oklahoma Supreme Court and the Oklahoma Court of Civil Appeals to entertain this appeal. They note that Mr. McMahon sought expungement of records in criminal prosecutions and that the legislature codified the expungement statutes in the Oklahoma Code of Criminal Procedure. They correctly note that controversies involving Oklahoma's criminal jurisprudence are exclusively reviewable and resolved by the Oklahoma Court of Criminal Appeals. However, Sections 18 and 19 do not deal exclusively with records related to criminal prosecutions. Expungement can be invoked when "the person was arrested and *no charges are filed*" and "the statute of limitations on the offense had expired and *no charges were filed*." Moreover, the remedy or relief of expungement is to be administered as "the ends of justice" may require. The legislature has clearly placed expungement within the general equitable power of the district court. Cases of equitable cognizance are reviewable by the Oklahoma Supreme Court and the Oklahoma Court of Civil Appeals upon assignment from the Supreme Court.