2001 OK CR 16

**Michael Scott HOOVER, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. O–2000–571.**

Court of Criminal Appeals of Oklahoma.

June 6, 2001.

As Amended June 7, 2001.

---

Kelly Basey, Assistant District Attorney, Oklahoma City, OK, Attorney for State at trial.

Steve Krise, Assistant City Attorney, Oklahoma City, OK, Attorney for Oklahoma City.

C. Merle Gile, Oklahoma City, OK, Attorney for Petitioner.

C. Merle Gile, Oklahoma City, OK, Attorney for Appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, James F. Kelly, Assistant Attorney General, Oklahoma City, OK, Attorneys for Appellee.

## OPINION

CHAPEL, Judge:

¶ 1 Michael Scott Hoover was tried by jury and acquitted of several counts of lewd molestation in the District Court of Oklahoma County, Case Nos. CF–97–3462 and CF–98–4543. On March 3, 2000, Hoover filed a Petition for Expungement and Sealing of Record resulting from these charges in the District Court. After an April 17, 2000, hearing, the trial court denied Hoover's motion for expungement. Hoover filed a timely appeal of this order.

¶ 2 Before we reach the merits of Hoover's claim we must address the appropriate avenue for appeal. The statutes governing expungement are 22 O.S.Supp.2000,

§ 18, and 22 O.S.Supp.1999, § 19. Before the recent amendments an appeal from an order on a motion for expungement was treated as a civil appeal. Section 19 now provides that an appeal is taken to this Court in accordance with our Rules.[1] Although this Court is the proper forum for these appeals, our Rules are silent on the procedure for appeal. Hoover filed this as one would a regular appeal, commencing with a Notice of Intent to Appeal and subsequently filing a Petition in Error and Brief in support of his petition.[2] The State was notified of the appeal but failed to file a brief in response until this Court requested a response.

¶ 3 This Court receives cases in a variety of ways. Regular appeals include felony and misdemeanor appeals, certiorari appeals, State appeals and resentencing appeals.[3] All these involve cases in which an initial finding of guilt or innocence has been adjudicated, or a controlling question of law has resolved the initial prosecution of a crime, or a sentence has been re-adjudicated on remand following an initial finding of guilt. In other words, these cases all have in common a trial court's final disposition of an initial claim. This Court has original jurisdiction over extraordinary writs of mandamus, prohibition and habeas corpus.[4] These cases include situations involving the unauthorized use of judicial or quasi-judicial power resulting in prejudice, a respondent's failure to perform a plain legal duty, or claims of unlawful confinement.[5] In these situations the trial court has not necessarily resolved the pending case, and the petitioner's complaint goes to an adjudicating body's conduct or other issues collateral to the pending criminal prosecution. Post-conviction appeals are limited to cases in which this Court has already decided the direct appeal and the petitioner wishes to raise new or collateral issues.[6] Other appeals within this Court's jurisdiction include decisions on revocation of suspended sentences or parole, bail pending appeal, disqualification of judges, deferred judgment and sentences, decisions in certain contempt proceedings, and orders of detention for nonpayment of fines or costs.[7] The procedures used in appeal from these proceedings differ with the nature of the situation. For example, claims involving bail are appealable as habeas corpus proceedings,[8] revocation of parole is governed by post-conviction procedures,[9] and revocation of suspended sentence claims are handled as regular appeals, with a limited scope.[10]

■ ¶ 4 This analysis of our existing rules suggests that we must review the nature of the claim to determine the appropriate form of appeal to this Court. A motion for expungement may be filed: after a criminal case has been disposed of by acquittal or dismissal, if criminal charges were not filed within a year of arrest or before the expiration of the statute of limitations, after a defendant receives a full pardon for a juvenile offense, if the offense was a misdemeanor and certain conditions are met, or if the offense was a nonviolent felony and certain conditions are met.[11] Thus a motion for expungement hinges on the final disposition, or lack thereof, of criminal charges. This most closely resembles the circumstances de-

---

1. 22 O.S.Supp.1999, § 19(C).

2. Rules 2.1(B), 2.5, 3.1, 3.2, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2000).

3. Rule 1.2(A), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2000).

4. Rules 1.2(B), 10.1, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2000).

5. Rule 10.6, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2000).

6. Section V, Rule 9.7, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2000).

7. Rule 1.2(D), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2000).

8. Rule 1.2(D)(2), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2000).

9. Rule 1.2(D)(1), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2000).

10. Rule 1.2(D)(3), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2000).

11. 22 O.S.Supp.2000, § 18.

scribed above under which this Court hears regular appeals in misdemeanor and felony proceedings. After a motion for expungement is filed the trial court must provide notice to a variety of State agencies with an interest in or information regarding the records in question, and a hearing shall be held on the matter.[12] This resembles a "trial" on the limited merits of the expungement motion. An expungement hearing is neither a collateral attack on the underlying case, nor a claim of unfair confinement, nor a claim the trial court acted unlawfully or failed to perform a legal duty, nor a claim that the petitioner has failed to comply with a trial court's directive regarding payment. Expungment proceedings are not analogous to plea proceedings or State appeals. We note that, when expungement claims were appealed as civil proceedings, they were treated as regular appeals.[13] Considering the nature of expungement proceedings we have determined that expungement proceedings are appropriately treated as regular appeals, and shall be governed by the same procedure as perfection of a regular misdemeanor or felony appeal. We attach as an Appendix an amendment to our Rules reflecting this decision. In accordance with this determination we find that Hoover appropriately appealed the denial of his motion for expungement.

¶ 5 We turn to the merits of Hoover's claim. Hoover argues the district court abused its discretion in refusing to order expungement of his arrest records. In June 1997 and July 1998, Hoover was charged in two cases with several counts of lewd acts with minor children. The cases were consolidated. After a May 1999 jury trial Hoover was acquitted of all charges. On March 3, 2000, Hoover petitioned the trial court to have his arrest records in these cases expunged. In his petition Hoover claimed the arrest records were detrimental to his priva-

cy, and the dangers of adverse consequences to him outweighed the public interest in retaining the records. In its response, the State agreed that Hoover was eligible to apply for expungement but argued Hoover had not shown his interest outweighed the public interest in retaining the records. The State claimed the public interest in retaining arrest records for sex offenders outweighed Hoover's interests; the State argued that sex offenders tend to repeat their crimes, particularly after being acquitted. After an April 17, 2000, hearing on the motion for expungement, the trial court denied Hoover's motion.

¶ 6 We first address the appropriate burden of proof in expungement cases. The Court of Civil Appeals considered this issue in the only published decision construing these statutes, *State v. McMahon.*[14] Following the plain language of the statute, the Court of Civil Appeals held that there is a prima facie showing of harm when a circumstance enumerated in § 18 is shown to exist.[15] After such a showing the burden "shifts to the agencies opposing expungement to show that keeping such records public does not harm privacy interests and would serve the ends of justice."[16] We agree that § 19 creates a rebuttable presumption of harm after a § 18 category is met. Neither party contests the fact that, by his acquittal at a jury trial, Hoover is eligible for expungement under § 18.[17] Thus the State was incorrect in arguing that Hoover had not met his burden to show harm, and the trial court erred in ruling that Hoover had not met this burden. Hoover made his prima facie showing of harm when he presented the Court with the acquittal information.

¶ 7 Once the presumption of harm is met the State must show that the public interest in keeping the records does not

12. 22 O.S.Supp.1999, § 19(B).

13. *State v. McMahon,* 1998 OK CIV APP 103, 959 P.2d 607.

14. 1998 OK CIV APP 103, 959 P.2d 607. McMahon applied for expungement after several cases against him were dismissed within a year after his arrest. The Court of Civil Appeals found the trial court did not err in denying expungement.

McMahon had a lengthy criminal history, and the Court determined the interests of justice were served by keeping the records of the dismissed cases public.

15. *McMahon,* 959 P.2d at 608.

16. *Id.*

17. 22 O.S.Supp.2000, § 18(1).

harm privacy interests and serves the ends of justice. We agree with the *McMahon* Court that, in determining whether the State has met this burden, the trial court should balance the personal harm to privacy and other adverse consequences of open records against the public interest in keeping the records open.[18] We also agree that the purpose of the expungement provisions is "to aid those who are acquitted, exonerated, or who otherwise deserve a second chance at a 'clean record.' "[19] The statute provides that the trial court may seal the records if it finds the State has not met its burden. The statute also provides that if the interests of justice are served neither by expungement nor by open records, the trial court may fashion an appropriate remedy of limited access.[20] As the trial court here did not consider either whether the State had met its burden or any alternative remedy, this case must be remanded.

¶ 8 We next turn to the information a trial court should consider in determining the interests of justice. *McMahon* emphasized the importance of the records presented to the trial court, and we agree that any records which are presented to show a petitioner's history of previous arrests or convictions will be relevant to the trial court's determination. As Hoover had no other arrest records, and no convictions, no such records were submitted to the trial court in this case. The State may also wish to present evidence that the interests of justice require retaining records due to, for example, a particular petitioner's personal conduct or circumstances. No such evidence was presented to the trial court here. Rather, the State presented as an expert witness the investigating officer on Hoover's cases, who testified crimes of child sexual abuse are difficult to prosecute, that sex offenders tend

to repeat offenses with minors, that if sex offenders are not held accountable they will victimize other children, and that sex offenders are required to register in Oklahoma. None of these statements had any direct relevance to Hoover's situation, as Hoover had been acquitted of the crimes. The State offered nothing to suggest that Hoover himself was a threat to the community, other than the fact that he had been charged with the crimes.[21] Hoover himself presented no evidence. Although Hoover had met the presumption of harm by presenting his acquittals, we note the trial court is required to balance the presumed harm and adverse consequences to Hoover against the State's interest in keeping his arrest records open. A petitioner moving for expungement may wish to aid the trial court by providing the court with information regarding harm and adverse consequences.

¶ 9 The trial court did not afford Hoover the presumption of harm the statute requires. Consequently, the trial court could not have balanced the harm to Hoover against any relevant evidence regarding the public interest in keeping his arrest records open. This error requires relief.

### Decision

¶ 10 The case is **REMANDED** to the District Court for a new hearing on the Petition for Expungement and Sealing of Records.

JOHNSON, V.P.J., and STRUBHAR, J., concur.

### APPENDIX A

Amendment to Rule 1.2, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2000)

Rule 1.2  METHODS OF APPEAL

A.  All Other Appeals

---

18. *McMahon*, 959 P.2d at 608.

19. *McMahon*, 959 P.2d at 609.

20. 22 O.S.Supp.1999, § 19(C); *McMahon*, 959 P.2d at 608.

21. In argument, the State claimed the arrest records should not be sealed because the arrest was valid and based on probable cause. Such a finding would contradict the intent of the Legislature in allowing expungement upon acquittal. We must presume that in each case where a jury

acquits a defendant, the initial arrest and subsequent finding at preliminary hearing were based on probable cause before the case could reach a jury trial. If expungement is not appropriate where there was probable cause for arrest, § 18(1) is meaningless. We will not presume the Legislature to have done a vain thing. While some other jurisdictions may hold acquittal is not enough for expungement, the Oklahoma Legislature has declared otherwise.

(8) *Expungement of Records.* Review of an order denying a petition for expungement of records is governed by the same procedure as perfection of a regular misdemeanor or felony appeal. *See* Sections 18 and 19 of Title 22, and Sections II and III of these Rules. The appropriate appeal time commences upon imposition of the order denying the petition for expungement.

LUMPKIN, Presiding Judge: Dissent.

¶ 1 In this opinion, the Court has improperly limited the right to appeal orders regarding the expungment of records to the defense. Pursuant to 22 O.S.Supp.2000 § 19(C) the Legislature has provided that "any order" entered under § 19 may be appealed to this Court in accordance with the rules of this Court. In fashioning the rule to comply with the Legislature's directive, this Court should not favor any one party. The rule should be equally applicable to all parties. Therefore, I agree with and join in Judge Lile's analysis of the Court's action in this case.

¶ 2 This Court has previously considered the interest of all parties in setting out rules of appellate procedure. By initially enacting Rule 6, this Court expanded on the State's right of appeal as set forth by the Legislature in 22 O.S.1991, § 1053. This right was later codified by the Legislature in 22 O.S.Supp.1987, § 1089.1 *et seq.* Consequently, any new rule addressing the right to appeal orders of expungment should similarly include the right of the State to file such an appeal.

¶ 3 Further, the Court has improperly relied on *State v. McMahon,* 959 P.2d 607 (Okl.Civ.App.1998) to find a rebuttable presumption of harm in § 19. A clear reading of 22 O.S.Supp.2000, §§ 18 and 19 shows that for a person to even qualify to bring a motion for expungment, he or she must fall within one of the categories listed in § 18. Once a valid motion for expungment has been brought, § 19 places the discretion in the district court to weigh the harm to the privacy of the person or dangers of unwarranted adverse consequences with the public interest in retaining the records. However, this Court seems to find that every valid motion for expungment is an automatic *prima facie* showing of harm which the State or other opposing agency must overcome. With this I cannot agree.

¶ 4 In the present case, Appellant qualified under § 18 to bring his motion for expungment. Thereafter, he provided no evidence to support that motion. In conducting the weighing process set forth in § 19, the trial court could only consider evidence presented by the State and argument presented by both the State and the defense. Based upon the record, the trial court properly determined that Appellant did nothing more than assert mere allegations of prejudice. Appellant failed to meet his burden of proof at the hearing "that the harm to [the] privacy of the person in interest, or dangers of unwarranted adverse consequences [to him would] outweigh the public interest in retaining the records" in question. Based on this record, I would affirm the trial court's decision.

LILE, Judge: dissents.

¶ 1 Title 22 O.S., § 19 provides that the trial court may grant or deny expungement of criminal records under certain limited conditions. Additionally, the court can do neither and issue an order limiting access, or seal a part of the records only. The court has broad discretion to issue an order to fit the circumstances. The legislature wisely provided that: "Any order entered" may be appealed to this Court. I dissent to the Court's order to remand this case. I would enter an order that seals the records for all public purposes but allows law enforcement agencies to maintain the records for internal investigative purposes. Appellant's repeated encounters with law enforcement, in an area of high recidivism-sexual abuse of minors, requires law enforcement to be able to retain these records.

¶ 2 I cannot agree, and will never agree to this Court's undoing, by rule, of a wise legislature decision to allow appeal by any party to an expungement order. Too often, this Court has acted as a super legislature and modified legislative enactments to fit its own views on policy grounds rather than upon constitutional grounds. Under our system of government, a properly enacted legislative

directive is law, unless it is unconstitutional. This Court does not have the legal right, nor the moral prerogative, to out legislate the legislature. Here, at the first opportunity, the Court vetoes a legislative enactment and makes its own rule, limiting appeals to order's denying expungement. This is an abusive and unwarranted interference in the legislative process. I dissent to the new Rule 1.2, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2000).