Question Submitted by: Kimberly Glazier, Executive Director, Oklahoma Board of Nursing
2017 OK AG 12
Decided: 09/07/2017
Oklahoma Attorney General Opinions

Cite as: 2017 OK AG 12, __ __

 

¶0 This office has received your request for an Official Attorney General Opinion in which you ask, in effect, the following questions:
1. Are the disciplinary records of a state licensing agency "civil records" within the meaning of 22 O.S.Supp.2016, § 18(B)?
2. If the disciplinary records of a state licensing agency are "civil records" subject to expungement pursuant 22 O.S.Supp.2016, §§ 18-19, is the agency entitled to notice and an opportunity to be heard before the records are ordered to be sealed?
I.
Background
¶1 Title 22, Section 18 of the Oklahoma Statutes allows certain categories of individuals to have their criminal records sealed if certain criteria are met. For instance, persons who were arrested but never charged with a crime, or who were charged with a crime but later exonerated or pardoned, are permitted to file motions for expungement. See 22 O.S.Supp.2016, § 18(A)(1)-(7), (12), (13). Similarly, persons charged with certain misdemeanor or nonviolent felony offenses may petition to have their criminal records expunged if they successfully complete a deferred sentence or the punishment was limited to a fine. See id. § 18(A)(8)-(10). "The plain purpose of [the expungement statute] is to afford special relief in the form of a full or partial sealing of records relating to a person's involvement or suspected involvement in a crime. It is clearly intended to aid those who are acquitted, exonerated, or who otherwise deserve a second chance at a 'clean record'." State v. McMahon, 1998 OK CIV APP 103, ¶ 9, 959 P.2d 607, 609.
¶2 A person who falls into any of the fourteen eligibility categories of Section 18 "may petition the district court of the district in which the arrest information . . . is located for the sealing of all or any part of the record, except basic identification information." 22 O.S.Supp.2016, § 19(A). The court then must schedule a hearing and provide notice to the prosecuting agency, the arresting agency, the Oklahoma State Bureau of Investigation ("OSBI"), and "any other person or agency the court has reason to believe may have relevant information related to the sealing of such record." Id. § 19(B). If, after the hearing, the court concludes "that the harm to privacy of the person in interest or dangers of unwarranted adverse consequences outweigh the public interest in retaining the records," it may "order such records, or any part thereof except basic identification information, to be sealed." Id. § 19(C). A showing that the petitioner is eligible to seek expungement under Section 18 amounts to a prima facie showing of harm, such that "the burden shifts to the State to show that keeping the records public does not harm the petitioner's privacy interests and would serve the ends of justice." Points v. State, 2014 OK CIV APP 27, ¶ 6, 328 P.3d 1232, 1234 (emphasis added).
¶3 Prior to 2016, "expungement" under Section 18 was defined only as "the sealing of criminal records." 22 O.S.Supp.2015, § 18(B). However, in 2016 the Legislature amended this definition to provide as follows:
For purposes of this act, "expungement" shall mean the sealing of criminal records, as well as any public civil record, involving actions brought by or against the State of Oklahoma arising from the same arrest, transaction or occurrence. 

2016 Okla. Sess. Laws. c. 348, § 1 (emphasis added). Your questions involve a determination of the types of records that qualify as a "civil record" for the purposes of Section 18(B).

II.
Discussion
¶4 Your first question is whether the disciplinary records of the State's professional licensing agencies are "civil records" subject to the expungement process. If they are not, we need not reach your second question, which addresses potential implications of requiring such agencies to comply with an expungement order. To answer this threshold question, we first examine the nature of records created when a licensing agency takes, or considers taking, disciplinary action.

A. Records of Disciplinary Action by Professional Licensing Agencies.
¶5 One function of the State's professional licensing agencies is to discipline individual licensees for misconduct, which may include criminal conduct or allegations of criminal conduct. By way of example, the Oklahoma Board of Nursing (the "Board") is required to take disciplinary action against a person holding or applying for a nursing license if the person is guilty of (i) a felony, (ii) any offense "reasonably related to the [person's] qualifications, functions, or duties," (iii) any offense involving "fraud, dishonesty, or an act of violence," or (iv) any offense "involving moral turpitude." 59 O.S.Supp.2016, § 567.8(B)(2). The failure to disclose such conduct to the Board when submitting a first-time or renewal application is likewise grounds for discipline. See id. § 567.8(B)(1); OAC 485:10-11-1(b)(1)(A). The Board must take disciplinary action in these circumstances regardless of whether a sentence is imposed. 59 O.S.Supp.2016, § 567.8(B)(2).
¶6 By Board rule, disciplinary proceedings are "initiated by a sworn complaint containing a brief statement of the facts supporting the request for action by the Board." OAC 485:10-11-2(b)(1); see also OAC 485:10-11-3(1). Whether the complaint leads to a formal hearing process governed by the Administrative Procedures Act, see OAC 485:10-11-2, or to an informal disposition, see OAC 485:10-11-3, a written record is created that will include, at a minimum, the complaint describing the alleged infraction, the licensee's response, and an order reflecting any action taken by the Board. If the complaint stems from criminal conduct on the part of the licensee, details of such conduct will be contained in the Board's written record.
¶7 In general, agency records must be maintained and made available to the public pursuant to the Oklahoma Open Records Act. See 51 O.S.Supp.2016, § 24A.5. Accordingly, a licensing board's disciplinary files, subject to limited exceptions, are treated as public records. See id. § 24A.5(1)-(2); 51 O.S.2011, §§ 24A.9, 24A.14. Indeed, the Court of Civil Appeals has held, albeit prior to the amendment to Section 18 discussed above, that a State licensing board has "no authority, either express or implied . . . to expunge records of disciplinary action taken[,]" and "[t]o the contrary, the Legislature ha[s] mandated such records to be preserved and maintained." Bd. of Med. Licensure v. Migliaccio, 1996 OK CIV APP 37, ¶ 10, 917 P.2d 483, 486, overruled on other grounds by Okla. Pub. Employees Ass'n v. State ex rel. Okla. Office of Personnel Mgmt., 2011 OK 68, 267 P.3d 838. With this discussion in mind, we turn to the question of whether the recent amendment to Section 18 provides a method for sealing a licensing agency's disciplinary records that reflect or refer to past criminal conduct that has been subject to a successful motion to expunge.

B. A State Licensing Agency's Disciplinary Records Are Not "Civil Records" Within the Meaning of 22 O.S.Supp.2016 § 18(B).
¶8 To determine whether the term "civil records" includes the disciplinary records of a State licensing agency, we look first to the language of the statute itself. If that language is "plain and unambiguous and its meaning clear," no further interpretation is necessary. TRW/Reda Pump v. Brewington, 1992 OK 31, ¶ 5, 829 P.2d 15, 20; see also Stump v. Cheek, 2007 OK 97, ¶ 9, 179 P.3d 606, 609 ("The words of a statute will be given their plain and ordinary meaning unless it is contrary to the purpose and intent of the statute when considered as a whole."). In determining a term's plain meaning, "[w]ords and phrases of a statute are to be understood and used not in an abstract sense, but with due regard for context, and they must harmonize with other sections of the Act." State v. Tate, 2012 OK 31, ¶ 7, 276 P.3d 1017, 1020.
¶9 We conclude that the plain meaning of "civil records" as the term is used in Section 18(B) includes only records of civil court proceedings and does not include disciplinary records of a State licensing body. We reach this conclusion for two reasons.

¶10 First
, we find that the plain meaning of the word "civil"-as it is used in Section 18(B) to modify "records"-is a reference to proceedings in the civil court system and is not so broad as to include disciplinary proceedings conducted pursuant to the administrative process of a licensing agency. A common definition of "civil" is "relating to private rights and legal proceedings in connection with them...[or] to rights and remedies sought by action or suit distinct from criminal proceedings." Webster's Third New Int'l Dictionary 412-13 (2002).[1] While the definition's specific mentions of "legal proceedings" and "suit," as well as the explicit comparison to "criminal proceedings," suggest that the word is meant to describe civil court proceedings, it is not clear that this definition would exclude administrative proceedings. Nevertheless, when the word "civil" is considered in statutory context, it is apparent that the Legislature treats civil and administrative proceedings as distinct from one other. See In re Initiative Petition No. 366, 2002 OK 21, ¶ 14, 46 P.3d 123, 127 (Words in a statute must "be given their plain meaning considering the context." (emphasis added)).
¶11 For example, the State Board of Agriculture is authorized to "[i]nitiate and prosecute administrative, civil, or criminal actions and proceedings necessary under the Oklahoma Agricultural Code." 2 O.S.Supp.2016, § 2-4(A)(3); see also 2 O.S.2011, § 2A-9(D) (authorizing State official to "commence appropriate administrative enforcement proceedings, or bring a civil action" for statutory or regulatory violations (emphasis added)). The Insurance Department too has "the authority to initiate and prosecute any administrative or civil action it deems necessary or advisable." 36 O.S.Supp.2016, § 361(B) (emphasis added). Another example comes from a statute permitting electronic monitoring in nursing homes and providing that recordings "may be admitted into evidence in a civil or criminal court action or administrative proceeding." 63 O.S.Supp.2016, § 1-1953.4 (emphasis added). And on at least one occasion, the distinction between civil and administrative proceedings is reflected as it pertains to records. See 59 O.S.Supp.2016, § 2095.13 (background checks for licensing of mortgage brokers may include a review of "civil or administrative records" (emphasis added)). The Legislature's consistent differentiation-in separate statutes covering a variety of subjects-between civil court actions and administrative proceedings leads us to conclude that the term "civil" should not be read to encompass administrative proceedings. Had the Legislature intended otherwise, it would have used language similar to the statutes described above, or simply used a catch-all term like "any public record." See Indep. Sch. Dist. No. I-20 of Muskogee Cty. v. Okla. State Dep't. of Educ., 2003 OK 18, ¶ 16, 65 P.3d 612, 620.
¶12 Second, interpreting the term "civil records" in Section 18(B) to include disciplinary records of a State licensing agency would contradict the explicit requirements of several other statutes governing the treatment of agency records. For instance, some agencies are required by their authorizing statutes to make disciplinary records available to the public. See 59 O.S.2011, § 509.1(D) (requiring "reports of all disciplinary action" taken by the State Board of Medical Licensure and Supervision to "be available to the public upon request"); id. § 2055(B)(6) (requiring the State Board of Examiners of Perfusionists to "[k]eep a record of all proceedings of the Board and make the record available to the public for inspection"). More broadly, the Open Meetings Act requires that agency proceedings "shall be kept . . . in the form of written minutes which shall be an official summary of the proceedings showing clearly . . . all matters considered . . . and all actions taken," and that such minutes "shall be open to public inspection." 25 O.S.2011, § 312. Because a broad interpretation of "civil records" in Section 18(B) would result in direct conflict with these statutes, the narrow reading is preferable. See, e.g., Sharp v. Tulsa Cty. Election Bd., 1994 OK 104, ¶ 11, 890 P.2d 836, 840 ("If two constructions are possible, this Court will prefer the one that avoids conflict between the two provisions.").
¶13 In sum, we find that the term "civil records," as used in the context of Sections 18 and 19 of Title 22, refers to records of legal proceedings in the State's civil court system and not to records of disciplinary action taken by the State's licensing agencies. Having reached this conclusion, we need not address your second question involving the potential implications of requiring State licensing agencies to comply with an expungement order.

¶14 It is, therefore, the official Opinion of the Attorney General that:
Disciplinary records of a State licensing agency are not "civil records" within the meaning of 22 O.S.Supp.2016, § 18(B), and therefore not subject to the expungement process set forth in 22 O.S.Supp.2016, §§ 18-19.
Mike Hunter
Attorney General of Oklahoma
Grant CodyAssistant Attorney General

FOOTNOTES
[1] "Civil" has a similar legal definition: "Of or relating to private rights and remedies that are sought by action or suit, as distinct from criminal proceedings <civil litigation>." Black's Law Dictionary 194 (7th ed. 2000).

 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
1996 OK CIV APP 37, 917 P.2d 483, 67 OBJ 1698, 
Bd. Of Medical Licensure v. Miglaccio
Discussed

 
2014 OK CIV APP 27, 328 P.3d 1232, 
POINTS v. STATE
Discussed

 
1998 OK CIV APP 103, 959 P.2d 607, 69 OBJ 2920, 
State of Oklahoma v. McMahon
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1992 OK 31, 829 P.2d 15, 63 OBJ 682, 
TRW/Reda Pump v. Brewington
Discussed

 
1994 OK 104, 890 P.2d 836, 65 OBJ 3055, 
Sharp v. Tulsa County Election Bd.
Discussed

 
2002 OK 21, 46 P.3d 123, 
IN RE: INITIATIVE PETITION NO. 366, STATE QUESTION NO. 689
Discussed

 
2003 OK 18, 65 P.3d 612, 
INDEP. SCH. DIST. NO. I-20 OF MUSKOGEE COUNTY v. OKLA. STATE DEPT. OF EDUCATION
Discussed

 
2007 OK 97, 179 P.3d 606, 
STUMP v. CHEEK
Discussed

 
2011 OK 68, 267 P.3d 838, 
OKLA. PUBLIC EMPLOYEES ASSOC. v. STATE ex rel. OKLA. OFFICE OF PERSONNEL MANAGEMENT
Discussed

 
2012 OK 31, 276 P.3d 1017, 
STATE v. TATE
Discussed

Title 2. Agriculture

 
Cite
Name
Level

 
2 O.S. 2-4, 
Powers of Board
Cited

 
2 O.S. 2A-9, 
Violations - Administrative Enforcement Procedures - Private Actions - Intervention - Orders - Fines
Cited

Title 22. Criminal Procedure

 
Cite
Name
Level

 
22 O.S. 18, 
Expungement of Criminal Records
Discussed at Length

 
22 O.S. 19, 
Procedure for Sealing Records - Reimbursement of Fees
Cited

Title 25. Definitions and General Provisions

 
Cite
Name
Level

 
25 O.S. 312, 
Written Minutes
Cited

Title 36. Insurance

 
Cite
Name
Level

 
36 O.S. 361, 
Creation of Anti-Fraud Unit
Cited

Title 51. Officers

 
Cite
Name
Level

 
51 O.S. 24A.5, 
Open and Confidential Records
Cited

 
51 O.S. 24A.9, 
Confidential Personal Notes and Personally Created Materials of Public Official Making Recommendation
Cited

Title 59. Professions and Occupations

 
Cite
Name
Level

 
59 O.S. 567.8, 
Denial, Revocation or Suspension of Licensure - Grounds - Charges, Investigations and Hearings - Reinstatement - Appeal
Discussed

 
59 O.S. 509.1, 
Range of Actions - Letter of Concern - Examination/Evaluation - Disciplinary Action Against Licensees - Surrender in Lieu of Prosecution
Cited

 
59 O.S. 2095.13, 
Administrator's Requirements to License and Register Mortgage Brokers, Mortgage Lenders, and Mortgage Loan Originators
Cited