STATE of Oklahoma, ex rel. OKLAHOMA STATE BOARD OF MEDICAL LICENSURE AND SUPERVISION, Appellee,

v.

John H. MIGLIACCIO, M.D., Appellant.

No. 84777.

Court of Appeals of Oklahoma, Division No. 3.

April 9, 1996.

Mack K. Martin, Oklahoma City, for Appellant.

James Robert Johnson, Oklahoma City, for Appellee.

## *OPINION*

HANSEN, Presiding Judge:

On March 26, 1993, a complaint was filed with Appellee, Board of Medical Licensure and Supervision (Board), asking it to consid-

er disciplinary action against Appellant, John Migliaccio, M.D. (Migliaccio), because of his conviction in federal court of conspiracy to defraud and mail fraud. The convictions involved obtaining money from the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS) by filing fraudulent claims.

The complaint cited 59 O.S.1991 §§ 509(6) & (10) as authority for action against Migliaccio. These subsections, respectively, define unprofessional physician conduct as, among other things, [6] conviction of a felony, or [10] commission of any act which is a violation of the criminal laws of Oklahoma when such act is connected with the practice of medicine. Under 59 O.S.1991 § 503, Board is authorized to suspend or revoke a physician's license for unprofessional conduct.

On May 14, 1993, after Migliaccio stipulated to the facts in the complaint, Board voted to suspend his medical license for six months. On that same day, Migliaccio filed a motion asking Board to reconsider the suspension. He had proposed alternative community service as a physician in the criminal case, and had been informed by the federal court he would be incarcerated if he could not so serve. The next day, Board modified its order to provide for suspension of twenty four hours, with a five year probationary period during which Migliaccio could practice medicine only in connection with unpaid community service.

Upon Migliaccio's motion, and based on his difficulties in obtaining employment and resulting financial strain, Board again modified its order on October 7, 1993. The modification maintained Migliaccio on probation, but allowed him to practice medicine without restriction. He continued his unrestricted practice until September 7, 1994, when the Federal Tenth Circuit Court of Appeals reversed all counts upon which Migliaccio had been convicted, except one, because of insufficiency of evidence. The one remaining count was reversed and remanded, but was dismissed on motion of the United States Attorney.

On September 8, 1994, Migliaccio filed his Emergency Application for Termination of Probation and Expungement of Record. In his application, Migliaccio related the reversal of his convictions, and argued that the actions in his criminal case should never have been a basis for imposition of disciplinary action by Board. He asked Board to terminate his probation and expunge all record of the disciplinary action. Board's staff filed a similar motion, but asked only that the probation be vacated and the action on the original complaint dismissed.

After a hearing on what action Board should, and could, take as the result of the reversal of Migliaccio's convictions, Board issued an order filed on December 15, 1994, dismissing the action against Migliaccio. Board also specifically ordered, [a] that the dismissal of the action shall relate back to the date disciplinary action was imposed, and [b], that the action shall not be considered by Board to be action by the Board for any reason otherwise allowed by law, "such as, for example, prior disciplinary action for extension of probation in any future action by the Board". Migliaccio brings this appeal from Board's order of December 15, 1994.

■ As his single appellate proposition, Migliaccio contends that because of the facts and circumstances "unique" to his case, Board erred in its failure to expunge or seal its records relating to the disciplinary action against him. As a preliminary matter, we find nothing in the record to support Migliaccio's assertion that the facts and circumstances of his case are unique, and therefore apparently deserving of singular consideration. Similarly, we do not agree the complaint against him was "frivolous and groundless". At his initial hearing, Migliaccio stipulated to the convictions which formed the basis for Board's action against him for unprofessional conduct.

Migliaccio further defines his proposition where he states, "[t]he central and only issue presented in this matter is whether or not this record [order] is one of those records which the public is authorized access under the [Open Records] Act".[1] He concedes

1. The Oklahoma Open Records Act is found at 51 O.S.1991 §§ 24A.1 et seq.

Board is a "public body" governed by the provisions of the Open Records Act, and that Board's order of December 15, 1994, is a record which Board is required to maintain under that act.

■ Migliaccio argues it is the nature of the record and not the mere fact it exists that determines public access. He argues, by analogy, grievances and complaints to the Bar Association, Council on Judicial Complaints and Board of Registered Dentists have been determined to be confidential. Board acknowledges an *initial* complaint from the public may be kept confidential pursuant to 51 O.S.1991 § 24A.14, which allows confidentiality of communications received by public officials from a person exercising constitutional rights. Board, however, contends, and we agree, that unless there is an express statutory exception, records created by a public body *after receipt of a complaint* must be open to public access and review. Even § 24A.14, which allows confidentiality for complaints, requires that an agency response to a complaint shall be public, except as necessary to protect the identity of the complainant.

■ We are unpersuaded by Migliaccio's argument that Board can make its own determination which records are confidential and which are public. Board is a statutory body "re-created" by 59 O.S.1991 § 481. Agencies created by statute may only exercise the powers granted by statute, and while an agency may exercise powers fairly implied from those expressly given, it may not expand those powers by its own authority. *Marley v. Cannon*, 618 P.2d 401 (Okla.1980). We find no authority, either express or implied, for Board to expunge records of disciplinary action taken. To the contrary, the Legislature had mandated such records be preserved and maintained.

In addition to the requirements of the Open Records Act, discussed above, Board's secretary is directed to preserve a record of all proceedings in hearings pertaining to unprofessional conduct. 59 O.S.Supp.1994 § 505. Further, reports of disciplinary action imposed by Board are expressly re-

quired to be available to the public upon request. 59 O.S.Supp.1994 § 509.1D(2). All of Board's meetings are to be conducted under the Open Meetings Act[2]. 59 O.S.Supp.1994 § 488. The Open Meetings Act requires written minutes, which shall be an official summary of the proceedings, including actions taken, and also requires those minutes to be open to public inspection. 25 O.S.Supp.1992 § 312.

Oklahoma's public policy regarding access to records, and individual rights of confidentiality, is set forth in the Open Records Act:

> ... the people are vested with the inherent right to know and be fully informed about their government. The Oklahoma Public Records Act shall not create, directly or indirectly, any rights of privacy or any remedies for violation of any rights of privacy; nor shall the Oklahoma Public Records Act, except as specifically set forth in the ... Act, establish any procedures for protecting any person from release of information contained in public records.... The privacy interests of individuals are adequately protected in the specific exceptions to the ... Act or in the statutes which authorize, create or require the records.

Title 51, Section 24A.2, Oklahoma Statutes 1991.

■ The facts and circumstances of this case do not bring it within any exception in the Open Records Act. Migliaccio's assertion that he is entitled to confidentiality under 51 O.S.1991 § 24A.7 because he is, "in essence", an employee of Board, is at best disingenuous. Section 24A.7 is clearly intended to apply to internal employees of a public body, and not those licensed by that body.

■ We have noted above the absence of any express authority for confidentiality or expungement in the statutes which require making and maintenance of records relating to unprofessional conduct by physicians. Where the Legislature has intended to allow confidentiality or expungement of records, it has done so expressly and in specific detail.

**2.** 25 O.S.1991 §§ 301 et seq.

*See, e.g.* 22 O.S.1991 §§ 18 & 19 (expungement/sealing of criminal records) and 10 O.S.Supp.1995 §§ 7005–1.2 & 7307–1.2 (confidentiality and expungement of records in the Oklahoma Children's Code and Oklahoma Juvenile Code). In view of its statement of public policy favoring the right of the people to be informed of governmental action, we do not believe the Legislature intended confidentiality of records by implication.

We also find no merit in Migliaccio's contention that a "balancing test" may be applied here, that is, weigh the public's right of access against his interests in nondisclosure. Migliaccio cites *Cummings & Associates v. City of Oklahoma City*, 849 P.2d 1087 (Okla. 1993), in support of this contention. As Board asserts, Migliaccio's reliance on *Cummings* is misplaced.

*Cummings* involved a request for traffic accident reports from the Oklahoma City Police Department. The Legislature made special provision for law enforcement records in 51 O.S.1991 § 24A.8. With the exception of records expressly required to be open to public inspection, subsection 24A.8(B) allows law enforcement agencies to deny access to records unless a court finds that the public interest or the interest of an individual outweighs the reason for denial.

■ There is, however, no provision in the Open Records Act which allows a court to balance an individual's interest in having records remain private and the public's interest in having access to the records. The Legislature has determined by statute that the public's interest is greater, except where specific statutory exemption is given. For that reason, the Supreme Court's reasoning in *Cummings* is not applicable here.

For a different reason, the Supreme Court's holding in *Tulsa Tribune Co. v. Oklahoma Horse Racing Commission*, 735 P.2d 548 (Okla.1987), provides Migliaccio no relief. There, the Supreme Court found an individual who had furnished information to a public body had standing under the Open Records Act to challenge release of that information. However, as Migliaccio acknowledges, the Legislature amended[3] the Open Records Act

in 1988 to, among other things, expressly provide that the Act "shall not create, directly or indirectly, any rights of privacy or any remedies for violation of any rights of privacy".

In *City of Lawton v. Moore*, 868 P.2d 690 (Okla.1993), the Supreme Court recognized that "as a result of the 1988 amendments to the [Open Records] Act, in *Tulsa Tribune* we construed an act that was considerably different from the Act we construe today". The Supreme Court further noted the amendments "show beyond credible argument to the contrary that the legislature disagreed with our interpretation, in *Tulsa Tribune*, of the Act".

In *City of Lawton*, the Court, notwithstanding its holding in *Tulsa Tribune* that notice must be given to persons affected by release of records, held Lawton was not required to give notice under the amended Act which said public bodies need follow only those procedures in the Act. The Supreme Court found the amended Act's lack of a notice requirement was intended by the Legislature to ensure the public had prompt and reasonable access to governmental records.

■ Using the Supreme Court's rationale in *City of Lawton*, we find the Legislature, by its 1988 amendments to the Open Records Act, intended to obviate the Supreme Court's holding in *Tulsa Tribune* that a potentially aggrieved individual had standing to challenge a public body's release of records under the Open Records Act. For that reason, Migliaccio's use of the *Tulsa Tribune* holding in support of his contention is ill founded.

*City of Lawton* also sets forth another factor, which is pertinent here, distinguishing it from *Tulsa Tribune*. In *City of Lawton*, the records documented arrests for driving under the influence of alcohol, while in *Tulsa Tribune*, the records were personal financial statements filed in support of a request to secure a pari-mutuel racing permit. The Supreme Court found *Tulsa Tribune* inapposite because the arrest records in *City of Lawton* were "indisputably public", not private filings that might disclose valuable confidential information if the records were pro-

---

**3.** Laws 1988, c. 187, § 2, emerg. Eff. June 6, 1988.

duced. As in *City of Lawton*, the records in this matter are public in that they reflect the actions of a governmentally sanctioned body. The interests of the people in being "fully informed about their government" is therefore even greater. *See*, 51 O.S.1991 § 24A.2.

We find no legal authority for Board to take the requested action of expungement or sealing of the records documenting Board's actions in Migliaccio's case. Migliaccio raises no other contentions contesting the efficacy of Board's order. Board's order is accordingly AFFIRMED.

ADAMS, V.C.J., and BUETTNER, J., concur.