2001 OK CR 35

**Terry Lynn NICHOLS, Petitioner,**

v.

**The Honorable Niles L. JACKSON, Presiding Administrative Judge, District Court of Oklahoma County, Respondent.**

**No. O–2001–1151.**

Court of Criminal Appeals of Oklahoma.

Dec. 4, 2001.

*OPINION ANSWERING CERTIFIED QUESTION OF LAW.*

LUMPKIN, Presiding Judge:

I.

¶ 1 On September 14, 2001, Petitioner filed in the Supreme Court of the State of Oklahoma a Motion to Seal Proceedings, Case No. 96,609. The Respondent filed a Response in opposition on September 17, 2001. On September 20, 2001, the Oklahoma Supreme Court transferred to the Court of Criminal Appeals the decision on the threshold issue of closure. The Oklahoma Supreme Court stated in part "[t]he threshold issue to be settled before any proceedings may be commenced is whether defendant/petitioner's

quest for withholding from public knowledge the entire course of this litigation should be upheld." Finding that a resolution of this threshold issue "may vitally affect the entire judicial process leading up to and progressing through the conduct of the trial upon charges that are now pending against the petitioner", the Oklahoma Supreme Court found the decision on the issue lay within the jurisdiction of the Court of Criminal Appeals. This Court was ordered to formally certify its answer to the Oklahoma Supreme Court.

¶ 2 In order to provide a complete review of the issues and to assist in the resolution of the same, this Court ordered that responses from Petitioner and Respondent and/or his designated representative were necessary. Having timely received those responses, we now address the certified question of law before us.

## II.

¶ 3 The United States Supreme Court has held there is a presumption of openness in criminal proceedings. In *Press–Enterprise Co. v. Superior Court of California for Riverside County,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) the Supreme Court stated:

> While open criminal proceedings give assurances of fairness to both the public and the accused, there are some limited circumstances in which the right of the accused to a fair trial might be undermined by publicity. In such cases, the trial court must determine whether the situation is such that the rights of the accused override the qualified First Amendment right of access. In *Press–Enterprise I* we stated:
>
> "[T]he presumption may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." (internal citations omitted).

478 U.S. at 9–10, 106 S.Ct. at 2740–41.

¶ 4 The Supreme Court further stated:

> "If the interest asserted is the right of the accused to a fair trial, the [proceedings] shall be closed only if specific findings are made demonstrating that, first, there is a *substantial probability* that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights."

*Id.,* 478 U.S. at 14, 106 S.Ct. at 2743.

¶ 5 These are the same principles of law relied upon in *United States v. McVeigh,* 918 F.Supp. 1452 (W.D.Okla.1996) wherein the United States District Court for the Western District of Oklahoma held that all applications and orders for payment of interim fees and support services for the defense attorneys in Timothy McVeigh's federal trial were to remain sealed. In that case, the Honorable Richard Matsch, District Judge, stated that media motions to open sealed documents would be determined by the answers to the following questions:

> Does the matter involve activity within the tradition of free public access to information concerning criminal prosecutions? Will public access play a significant positive role in the activity and in the functioning of the process? Is there a substantial probability that some recognized interest of higher value than public access to information will be prejudiced or affected adversely by the disclosure? Does the need for protection of that interest override the qualified First Amendment right of access? Is the closure by the court essential to protect that interest, considering all reasonable alternatives.

918 F.Supp. at 1464.

¶ 6 In answering the above questions, Judge Matsch relied on the particular facts of the McVeigh prosecution, the Federal Rules of Criminal Procedure, and the Federal Criminal Justice Act, 18 U.S.C. § 3006A, together with the guidelines adopted by the Judicial Conference of the United States. Judge Matsch found the Federal Freedom of Information Act, 5 U.S.C. § 552, was not applicable as it applies only to the executive branch, and not the courts.

¶ 7 We agree with the *McVeigh* court's application of the rights guaranteed by the First, Fifth, and Sixth Amendments of the United States Constitution and as adopted by the Oklahoma Constitution.[1] *See Okl. Const.*, art. II, §§ 6, 7, & 20. In reviewing statutory enactments, we recognize those provisions must always be interpreted so as to adhere to rights vested through both the state and federal constitutions as they apply both to an individual charged with a crime and to the public. In Petitioner's case, the particular facts comprising the state prosecution are different from the facts of McVeigh's case and involve the application of state law. It is this distinction that yields answers to the above questions different from the conclusions reached in *McVeigh.*

## III.

¶ 8 In 1985, the Oklahoma Legislature enacted the Oklahoma Open Records Act (Act). This Act provides that "[a]ll records of public bodies and public officials shall be open to any person for inspection, copying, or mechanical reproduction during regular business hours." 51 O.S.Supp.2000, § 24A.5. The Legislature explained:

> Thus, it is the public policy of the State of Oklahoma that the people are vested with the inherent right to know and be fully informed about their government.... The purpose of this act is to ensure and facilitate the public's right of access to and review of government records so they may efficiently and intelligently exercise their inherent political power. The privacy interests of individuals are adequately protected in the specific exceptions to the Oklahoma Open Records Act or in the

statutes which authorize, create or require the records.

51 O.S.1991, § 24A.2.

¶ 9 The Act's definition of "record" includes "all documents, including but not limited to, any books, papers, ... or other material regardless of physical form or characteristic, created by, received by, under the authority of, or coming into the custody, control or possession of public officials, public bodies, or their representatives in connection with the transaction of public business." 51 O.S. Supp.2000, § 24A.3(1). The Act also states that boards and courts fall under its definition of "public body", and therefore are subject to its provisions. 51 O.S. Supp.2000, § 24A.3(2).

¶ 10 Records filed in the Oklahoma Supreme Court in Petitioner's original action, being documents and papers coming into the custody and control of the Supreme Court in connection with the transaction of the public business of the criminal prosecution of Petitioner, fall within the purview of the Act. Unless the records fall within a statutorily prescribed exception in the Act, the Act requires the records be made available for public inspection and copying. For example, 51 O.S.Supp.2000, § 24A.5(2)(a), exempts records protected by state evidentiary privilege, including the attorney-client privilege. An examination of the Act shows no exception exempting records filed in Petitioner's Supreme Court action from public disclosure.

¶ 11 The Act does provide for the removal of materials from the public record by a court order. 51 O.S.Supp.2000, § 24A.25. However, there is no provision in the Open Records Act which allows a court to balance an individual's interest in having records remain private and the public's interest in having access to the records. *State ex rel.*

---

1. In *McVeigh,* Judge Matsch stated:
   The appearance of a defendant in response to a criminal complaint, an indictment, or an information begins the adversary process directed towards determining the sufficiency of the government's evidence to establish the factual elements of the charged offense beyond a reasonable doubt. That determination is ordinarily made by a jury after a public trial, as required by the Sixth Amendment, conducted according to procedures and limitations assuring funda-

   mental fairness with the guarantee of due process of law in the Fifth Amendment.
   Although the Sixth Amendment protects the right of the accused to a public trial, it has long been clear that the public and the press also have a right to attend criminal trials. No integral part of the trial, including jury selection, can be closed to the public ... (internal citations omitted).
   918 F.Supp. at 1459.

*Oklahoma State Bd. of Medical Licensure and Supervision v. Migliaccio,* 917 P.2d 483, 487 (Okl.App.1996). The Legislature has determined by statute that the public's interest is greater, except where specific statutory exemption is given. *Id.* However, such statutory provisions are always subject to interpretation to ensure compliance with constitutionally guaranteed rights.

### IV.

¶ 12 Title 22 O.S.Supp.2000, §§ 2001–2002, known as the Oklahoma Criminal Discovery Code, (Code) governs the procedure for discovery in all criminal cases in all courts of this state. The Criminal Discovery Code requires the disclosure of certain evidence by both the State and the defense. 22 O.S.Supp.2000, § 2002(A) & (B).

¶ 13 The types of pleadings sought to be sealed in this case contain information regarding fees paid to Petitioner's attorneys. These pleadings do not contain any information regarding witnesses' statements of either party or trial strategy which would fall under the provisions of the Criminal Discovery Code. However, the Code does recognize the concept of selective sealing allowing for restricted disclosure or the issuance of a protective order. Title 22 O.S.Supp.2000, § 2002(E)(1) provides that "upon motion of the state or the defendant, the court may at any time order that specified disclosures be restricted, or make any other protective order." The subsection continues "[I]f the court enters an order restricting specified disclosure, the entire text of the material restricted shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal." 22 O.S.Supp.2000, § 2002(E)(1).

¶ 14 The Code further provides that a "discovery order shall not include discovery of legal work product of either attorney which is deemed to include legal research or those portions of records, correspondence, reports, or memoranda which are only the opinions, theories, or conclusions of the attorney or the attorney's legal staff." 22 O.S.Supp.2000, § 2002(E)(3). While the proceedings sought to be sealed in this case, i.e. an original action in the Oklahoma Supreme Court, are not subject to the Criminal Discovery Code, the Code's provision for selective sealing may accomplish the goal of protecting information.

### V.

¶ 15 In the present case, the records of money budgeted for and paid to defense counsel from the Oklahoma County District Court Fund have been a matter of public record since the date of the first payment in October 1999, on file in the office of the Oklahoma County District Court Clerk, and available for inspection and copying by the general public. Petitioner has not shown he qualifies for one of the specific exemptions in the Open Records Act. Petitioner's complaint that portions of Judge Jackson's Order denying his request for additional funding contained criticism of defense counsel can be excised if it is determined that disclosure would have a potential adverse effect on Petitioner's trial. This selective closure would be in keeping with the policy of the Open Records Act that any reasonably segregated portions of records containing exempt material be deleted and the remainder of the records be made available to the public. 51 O.S.Supp.2000, § 24A.5(2).

¶ 16 Petitioner's claim that disclosure of the amount of money budgeted and expended for his defense would "add to the public's hostility to Mr. Nichols and his defense team thereby compromising his right to a fair trial" is speculation at this stage of the proceedings and not sufficient grounds for closure. Any hostility by the public is a concern in so far as it affects the selection of a fair and impartial jury. An accused is not entitled to a juror who knows nothing about his case. *McBrain v. State,* 764 P.2d 905, 909 (Okl.Cr.1988). He is entitled to jurors who can fairly and impartially decide his case based on the evidence presented at trial. *Id.* The appropriate time for determining whether venire persons may properly sit as impartial jurors is during *voir dire* held at the beginning of the trial. Prospective jurors with preconceived opinions for or against a criminal defendant who cannot set aside those opinions or who have doubts about

their ability to be impartial are to be excused from jury service. *Patton v. State,* 973 P.2d 270, 284 (Okl.Cr.1998), *cert. denied,* 528 U.S. 939, 120 S.Ct. 347, 145 L.Ed.2d 271 (1999).

¶ 17 Further, Oklahoma law provides for a change of venue if appropriate to ensure a fair trial. A change of venue is proper if the influences of the news media, either in the community at large or in the courtroom itself, pervade the proceedings, or when the entire circumstances surrounding the trial indicate the defendant will not receive a fair trial. *Allen v. State,* 862 P.2d 487, 490 (Okl. Cr.1993). *See also* 22 O.S.1991, § 561 ("Any criminal cause pending in the district court may, at any time before the trial is begun, on the application of the defendant be removed from the county in which it is pending to some other county in said judicial district, whenever it shall appear in the manner hereinafter provided, that the minds of the inhabitants of the county in which the cause is pending are so prejudiced against the defendant that a fair and impartial trial cannot be had therein.")

¶ 18 Prejudice from exposure to adverse pretrial publicity must be shown by clear and convincing evidence that jurors were specifically exposed to the publicity and that the accused was thereby prejudiced. *Robison v. State,* 677 P.2d 1080, 1083 (Okl. Cr.), *cert. denied,* 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984). Thus, if Petitioner can show that prospective jurors in Oklahoma County are unable to be fair and impartial due to media coverage about the fees paid to defense counsel, a change of venue may be had to a county in the same judicial district where the public opinion is less persuasive. *See Childress v. State,* 1 P.3d 1006, 1015 (Okl.Cr.2000).

¶ 19 At the heart of the issue before us is a contract dispute. The pleadings involved in that controversy do not contain any information, which might be considered attorney "work product" or privileged information. There is no discussion of potential witnesses or client strategies. However, detailed billing statements by an attorney to the Court

could, in fact, disclose such information and should be considered by any court deciding what records should or should not be sealed. If such information were to be included in pleadings submitted to the court, such portions could be selectively sealed under 22 O.S.Supp.2000, §§ 2002(E)(1) & (3).

¶ 20 CERTIFIED QUESTION: The Oklahoma State Supreme Court has certified a Question of Law as follows:

"whether defendant/petitioner's quest for withholding from public knowledge the entire course of this litigation should be upheld."

¶ 21 QUESTION ANSWERED: The issues of closure of hearings and the sealing or records is a question of law, which in each instance is driven by the facts and circumstances of the particular case. The issue cannot be answered in a *carte blanche* approach and should be addressed on an ongoing basis based upon the current status of the proceeding. In *Press–Enterprise Co. v. Superior Court of California for Riverside County,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) and *United States v. McVeigh,* 918 F.Supp. 1452 (W.D.Okla.1996), a hierarchy of rights is set forth flowing from our constitutions and statutory enactments. The right of access protected by the First Amendment to the U.S. Constitution is a qualified right. When that qualified right conflicts with the constitutional guarantees afforded to a person charged in a criminal proceeding, it is the rights of the individual which must be protected. The cases relied upon in this opinion set out the analysis to be utilized to ensure the balancing of those rights, which will ensure a criminal defendant is afforded his constitutional rights to counsel, due process and fair trial.

¶ 22 Applying the criteria set forth in *Press–Enterprise* and *McVeigh* at this point in the criminal prosecution, Petitioner's right to a fair trial does not require wholesale closure of the proceedings before the Oklahoma State Supreme Court or sealing of the records filed in that Court.[2]

---

2. In *Press–Enterprise,* the United States Supreme Court stated:

The presumption [of openness] may be overcome only by an overriding interest based on

CHAPEL, J.: CONCUR IN PART/DISSENT IN PART.

STRUBHAR, J., LILE, J., and LINDLEY, J.,[3] CONCUR.

CHAPEL, J., concurring in part, dissenting in part:

¶ 1 The Supreme Court of Oklahoma has certified to us the question, "whether defendant/petitioner's quest for withholding from public knowledge the entire course of this litigation should be upheld." This question reaches our Court in the context of payment of court-appointed defense counsel, and this Court directed the parties to respond on the issue of whether records regarding the remuneration of court-appointed counsel, and the disclosure of counsel's expenditures, should be sealed. Although the opinion concludes that nothing requires "wholesale closure" of these proceedings, that is neither the question we asked the parties to brief, nor the question the opinion actually analyzes.[1] I agree with the majority's conclusion that nothing presented to this Court today requires wholesale closure of the proceedings. However, I disagree with the majority conclusion that none of the records in this case should be sealed.

¶ 2 The question of sealing records (or closing proceedings) involves two distinct areas of law. The first and most important is constitutional. The First Amendment to the federal constitution grants the public a right of access to public records, including trial proceedings. In criminal trials this First Amendment right to access is qualified and must be balanced with the Fifth and Sixth Amendment rights of the accused to a fair trial.[2] A court must find "that closure is essential to preserve higher values and is narrowly tailored to serve that interest."[3] The court must find (1) a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and (2) reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights.[4] Nichol's co-defendant, McVeigh, successfully asked the federal district court to seal the records concerning attorney fees related to his trial. In determining the *McVeigh* records should be sealed, the federal district court looked at five factors:

Does the matter involve activity within the tradition of free public access to information concerning criminal prosecutions? Will public access play a significant positive role in the activity and in the functioning of the process? Is there a *substantial probability* that some recognized interest of higher value than public access to information will be prejudiced or affected adversely by the disclosure? Does the need for protection of that interest override the qualified First Amendment right of access? Is the closure by the court essential to protect that interest, considering all reasonable alternatives?[5]

¶ 3 The majority apparently recognizes the principle that First Amendment rights and the right to a fair trial must be balanced, as it cites these cases. However, the majority does not analyze Nichols's claims under constitutional law principles. Rather, the majority ultimately relies on the second area of law involved, the right of access granted by Oklahoma statute. I consequently turn to that statute to begin my analysis. I note in doing so that no application of a state statutory

---

findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.
478 U.S. at 9, 106 S.Ct. at 2741, quoted in *McVeigh*, 918 F.Supp. at 1463.

3. By appointment of the Chief Justice due to the recusal of Judge Charles A. Johnson from this case.

1. I believe that, by its order directing the parties to respond to the particular issue of remunera-

tion, this Court reformulated the certified question submitted by the Oklahoma Supreme Court.

2. *Press–Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 9, 106 S.Ct. 2735, 2740–41, 92 L.Ed.2d 1 (1986).

3. *Id.*

4. *Id.* at 14, 106 S.Ct. at 2743.

5. *United States v. McVeigh*, 918 F.Supp. 1452, 1464 (W.D.Okl.1996).

right will control where a federal constitutional right is threatened. The majority's focus on the state statute is thus misplaced and, should a conviction result from this prosecution, leaves unresolved a major issue for the United States Supreme Court and/or the lower federal courts on collateral review.

¶4 Oklahoma's Open Records Act[6] (Act) clearly applies on its face to the courts. That Act exempts from inspection "records protected by a state evidentiary privilege such as the attorney-client privilege, [and] the work product immunity from discovery."[7] The Act provides that records may be sealed by court order,[8] and that otherwise non-exempt records may have "reasonably segregable" parts deleted before they are made public.[9] The majority suggests that the latter provision is sufficient to excise any personal comments contained in the documents. I agree. However, I believe Nichols has shown he qualifies for a specific exemption under the Act.

¶5 The majority characterizes this as a contract dispute and states none of the information is work product or privileged. In so finding, the majority does not address Nichols's claim that a detailed accounting of payments would adversely affect counsel's ability to investigate and conduct the case. Court-appointed counsel is being paid through the court fund, administered by the Presiding Judge of the District Court of Oklahoma County. An unusual amount of money has already been budgeted for attorney fees and counsel has asked for more. In order to determine whether counsel is properly spending this public money, the district court has the right and duty to demand a detailed accounting from court-appointed counsel. The court will need to question the attorneys regarding specific disbursements and dispute items when the court feels this is necessary.[10] Any attorney accustomed to billing hours must account in detail for the time and money spent by explaining exactly how the time or money was used. In this way the client knows what decisions the attorney made in conducting his case, and what means he used to carry them out. The district court should expect no less. Of course, this detailed accounting by its nature will require court-appointed counsel to divulge strategic and investigatory information. In *McVeigh*, even the news organizations moving to unseal fee records conceded "that disclosing the services performed and the reason for them would inappropriately reveal the defendants' investigations and strategies."[11] I believe this information is clearly covered by the attorney-client privilege, and exempt under the Open Records Act. I would seal the specific details of how court-appointed counsel uses public money in conducting the case. These records should remain under seal until the case is concluded.

¶6 Turning to the constitutional analysis, I again cannot agree with the majority's conclusory statement that the *Press–Enterprise* and *McVeigh* criteria do not require at least some records be sealed. Actually applying these factors, I conclude that, just as detailed billing information is exempt under the Open Records Act, it affects Nichols's rights to a fair trial. This fee material—this contract dispute—does involve material traditionally open to the public. However, public access will not play any significant positive role here. I believe there is a substantial probability that Nichols's right to a fair trial, which is a recognized interest of higher value than public access to information, will be prejudiced by the disclosure of details of remuneration. The right to a fair trial overrides the qualified First Amendment right of public access. Considering all reasonable alternatives, sealing records of all but the amounts disbursed and to whom is essential to protect Nichols's right to a fair trial.

---

6. 51 O.S.Supp.2000, § 24A.1 *et seq.*

7. 51 O.S.Supp.2000, § 24A.5(1)(a).

8. 51 O.S.Supp.2000, § 24A.25.

9. 51 O.S.Supp.2000, § 24A.5(2).

10. These fee proceedings should of course be ex parte. These proceedings are not part of the criminal prosecution, but, rather, an accounting to the district court for expenditure of public funds. The prosecutor has no interest in knowing the particulars of defense counsel's spending.

11. *McVeigh*, 918 F.Supp. at 1465.

¶ 7 Nichols relies on the *McVeigh* decision to urge that all records regarding remuneration of appointed counsel should be sealed entirely. In *McVeigh*, the fee records were sealed from the beginning of the case. Nichols did not make that request. He concedes that, since October 1999, the amounts budgeted and paid to court-appointed counsel have been public records on file with the Oklahoma County District Court Clerk. I agree with the majority that Nichols cannot, two years later, request that the disbursement records be sealed. Had Nichols asked the district court to seal fee records when the case began my conclusion might be different. I believe that the amounts paid, and to whom, are matters of public record. Nichols has not shown, this late in the proceedings, that they should be sealed.

¶ 8 I agree with the majority that the criminal discovery code does not apply here. I also agree that Nichols speculates when he claims that public disclosure of counsel's fee arrangements would add to public hostility. If Nichols has evidence public knowledge of his attorney's fees has created such a hostile atmosphere that he cannot get a fair trial, he may bring that to the district court's attention. In any event there are trial and appellate remedies available for this issue.[12] This being the case, I see no need to discuss voir dire or venue issues, which are equally speculative.

¶ 9 Finally, I dissent to the decision to publish this opinion.[13]

---

12. Quite obviously, this issue is collaterally related because at some point Nichols will raise the issue of whether or not he can get a fair trial. Traditional analysis of that issue involves publicity and public hostility considerations. In my judgment, court-sanctioned release of detailed billing records would compound those problems.

13. As I have earlier noted, before this case is over this Court is likely to rule upon issues touching every area of the criminal law in Oklahoma. *Nichols v. District Court*, No. PR–2001–446 (Okl.Cr. July 11, 2001) (not for publication) (Chapel, J, dissenting). This Court's published opinions are the law of Oklahoma. Thus it is likely that a very substantial part of our criminal jurisprudence will be based upon a single hard case.