John DOE I, Appellant,

v.

Jack CONWAY, Attorney General, Commonwealth of Kentucky, Appellee.

Jack Doe, Appellant,

v.

Jack Conway, Attorney General, Commonwealth of Kentucky, Appellee.

Nos. 2009–CA–000641–MR, 2009–CA–000642–MR.

Court of Appeals of Kentucky.

Nov. 12, 2010.

Discretionary Review Denied by Supreme Court Feb. 15, 2012.

Elmer J. George, Gregory Dean Simms, Lebanon, KY, for appellants.

Jack Conway, Attorney General, Janet M. Graham, Lisa K. Lang, Assistant Attorney General, Frankfort, KY, for appellee.

Before ACREE, VANMETER and WINE, Judges.

### OPINION

ACREE, Judge:

The appellants, John Doe I and John Doe II,[1] seek reversal of the Franklin Circuit Court's decision to allow public inspection of agency records containing allegations that they were engaged in wrongdoing. The circuit court correctly determined that disclosure is required by the Kentucky Open Records Act. While these records arguably contain information of a private nature concerning the appellants, the public's interest in inspection greatly outweighs any privacy interest that may exist. Therefore, the privacy interest exception set forth in Kentucky Revised Statutes (KRS) 61.878(1)(a) is inapplicable and we affirm.

The information at issue in this case was derived from a joint investigation of the Office of the Attorney General, the Federal Bureau of Investigation, and the Kentucky Transportation Cabinet. The investigation responded to alleged wrongdoing within the Transportation Cabinet and, more specifically, the Division of Driver Licensing within the Kentucky Department of Vehicle Regulation. Among other things, the investigation sought to determine whether Cabinet officials: improperly awarded government contracts in exchange for personal gain; used their access to Kentucky driver data to erase traffic offenses in exchange for money; improperly used access to Cabinet resources to engage in sex acts, consume alcohol, and take drugs; and otherwise improperly used their cabinet positions for personal gain or other improper purposes.

Following the investigation, the Director of Driver Licensing was fired for lack of oversight and failing to protect the integrity of the driver's licensing record system. Various other cabinet officials resigned or announced their retirement. Included among those individuals who announced their retirement was John Doe I. While

---

1. Although the notice of appeal in 2009–CA–000642–MR refers to the appellant as "Jack Doe," in keeping with convention, we refer to the appellants as "John Doe I" and "John Doe II."

not a member of the cabinet, John Doe II engaged in close interactions with cabinet officials as a lobbyist and business partner of John Doe I.

Both appellants continue to maintain a close relationship with the Kentucky State Government. John Doe I was recently given a gubernatorial appointment to the Board of Claims and the Crime Victims Compensation Board and is compensated by the Commonwealth for his service. John Doe II continues to be a registered lobbyist and business partner of John Doe I.

Following the appointment of John Doe I to the aforementioned boards, Tom Loftus, a reporter from the Courier–Journal, submitted an open records request to the Office of the Attorney General (OAG) seeking review of the investigative file relating to John Doe I and John Doe II. The OAG reviewed the request and determined that portions of the file were subject to public disclosure. However, before providing the records, the OAG notified the appellants and other parties named therein and afforded them the opportunity to review the file and seek judicial relief from disclosure.

John Doe I and John Doe II filed identical lawsuits in Franklin Circuit Court seeking injunctive relief and a declaration of rights against the Attorney General along with a Motion for Restraining Order and Temporary Injunction. Both complaints alleged that the documents should not be disclosed because they contained information of a private nature that, if revealed, would constitute a clearly unwarranted invasion of their personal privacy.

*See* KRS 61.878(1)(a). The circuit court disagreed and denied the appellants' relief in an opinion and order entered on March 31, 2009.[2]

The circuit court determined the public's interest in inspecting the records greatly outweighed the appellants' privacy interest in prohibiting inspection. However, the court did note that the OAG intended to redact personal information that could lead to identity theft. Specifically, home addresses, social security numbers, home phone numbers, and dates of birth were redacted.

The only issue on appeal is whether the information contained in the investigative file is personal in nature and whether disclosure would cause a clearly unwarranted invasion of the appellants' personal privacy. As discussed below, "[t]he statute contemplates a case-specific approach" and the decision is reviewed *de novo. Ky. Bd. of Exam'rs of Psychologists v. Courier–Journal,* 826 S.W.2d 324, 328 (Ky.1992).

The Kentucky Open Records Act (the Act) allows for the inspection of public records by any person. *See* KRS 61.872. While the Act does provide some exceptions to disclosure, the

> basic policy of KRS 61.870 to 61.884 is that free and open examination of public records is in the public interest and the exceptions provided for by KRS 61.878 or otherwise provided by law *shall be strictly construed, even though such examination may cause inconvenience or embarrassment to public officials or others.*

**2.** The Franklin Circuit Court did redact information from the file concerning Jane Doe I and Jane Doe II. Jane Doe I was a private individual and the allegations that would subject the information to public scrutiny were false; therefore, the parties stipulated to its redaction. Jane Doe II was a public employ-

ee who participated in the investigation, but was not a subject of the investigation. The circuit court determined that revealing her identity might subject her to workplace retaliation and stifle future investigations. The decision to redact information regarding Jane Does I and II was not questioned on appeal.

KRS 61.871 (emphasis added). Among those exceptions that must be strictly construed is the personal privacy exception set forth in KRS 61.878(1)(a). Pursuant to KRS 61.878(1)(a), "[p]ublic records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy" are excluded and disclosure is not required. KRS 61.878(1)(a).

■ The exception set forth in KRS 61.878(1)(a) acknowledges "that personal privacy is of legitimate concern and worthy of protection from invasion by unwarranted public scrutiny." *Ky. Bd. of Exam'rs of Psychologists*, 826 S.W.2d at 327. However, this interest must be considered in light of the Act's "general bias favoring disclosure." *Id.* Thus, "there is but one available mode of decision, and that is by comparative weighing of the antagonistic interests." *Id.* In other words, a case-specific approach is necessary and the circumstances of a particular case will affect the balance. *Id.* at 327–28.

■ First, this court must consider the nature of the information contained in the file. Second, if the information is indeed of a personal nature, this court must determine if the public's interest in disclosure outweighs the privacy interests involved.

**John Doe I**

■ As mentioned above, John Doe I was a Transportation Cabinet official at the time of the investigation and the file contains allegations concerning actions by John Doe I in this capacity. These allegations include impropriety in the formation of government contracts including interactions between John Doe I and his business partner, the lobbyist, John Doe II. The file also indicates that John Doe I misused government time, property, and funds. Finally, the file contains allegations that

John Doe I engaged in sexual harassment of at least one government employee.

John Doe I asserts that the information is clearly of a personal nature as it involves allegations of sexual misconduct and is full of salacious, inflammatory material. While some of the conduct may indeed be of a personal nature, the conduct allegedly occurred on government time, while on government-sponsored trips, and among government employees. Thus, to the extent this information is of a private nature, it must be weighed against the public's interest in knowing what its government is doing. *See Zink v. Dep't of Workers' Claims, Labor Cabinet*, 902 S.W.2d 825, 829 (Ky.App.1994) ("At its most basic level, the purpose of disclosure focuses on the citizens' right to be informed as to what their government is doing."); *Ky. Bd. of Exam'rs of Psychologists*, 826 S.W.2d at 328 ("inspection of records may reveal whether the public servants are indeed serving the public, and the policy of disclosure provides impetus for an agency steadfastly to pursue the public good.").

While the appellant claims that the information in the file is hearsay, rumors, and speculation, it is nonetheless subject to disclosure under the Act because of the importance of the public interest involved. To imply that the public should not be given the opportunity to weigh this information for itself would defeat the purpose of the Act which is to ensure accountability. This is true even if an investigation does not lead to criminal charges. Indeed, in some instances the failure to bring criminal charges may be the basis of public scrutiny.

While not controlling, decisions of the OAG are consistent with this finding. *See* 98–ORD–45, p. 3 ("The fact that the Cabinet may have ultimately concluded that there is no basis for action against an individual employee has no bearing on

whether these records must be released."). Indeed, the OAG has determined that both substantiated and unsubstantiated complaints of sexual harassment against cabinet employees are subject to scrutiny. *Id.*; *see also* 02–ORD–231 (finding that the public has a great interest in disclosure of alleged sexual misconduct by government employees during the scope of their employment regardless of whether the claims are substantiated). John Doe I fails to cite any authority to the contrary.

While the appellant correctly points out that no criminal charges were raised against him, he fails to mention the sweeping changes that were made by the Cabinet subsequent to the investigation. Included among the changes was the implementation of the Office of Inspector General to oversee cabinet activities and ensure accountability. Further, cabinet officials including John Doe I announced their early retirement subsequent to the investigation.

The alleged improprieties by John Doe I involved other government employees in two settings: (1) while he was on the clock as a government employee and making decisions in his capacity as a cabinet official; and (2) while on government-sponsored trips. As a result, any privacy interest that might exist is clearly outweighed by the public interest in disclosure of government activities. This is especially true when one considers that John Doe I was recently appointed to another position within state government. Such disclosure is in line with the purpose of the Act because it subjects the government to public scrutiny. To the extent this information invades John Doe I's personal privacy, the invasion is warranted and disclosure is required.

**John Doe II**

■ The allegations regarding John Doe II are more limited in scope. The file contains information regarding improper interactions between John Doe I and John Doe II including the exchange of checks and tickets to a University of Kentucky athletic event. Further, the file alleges impropriety in the formation of government contracts procured for John Doe II's clients.

While not a public official, John Doe II is a public figure and as the circuit court aptly pointed out, "he is someone who is intimately involved with the everyday workings of the government." Despite his assertion that the information contained in the file is of a private nature, John Doe II fails to establish this fact. Instead, the alleged improprieties occurred during his dealings with the state government and government employees. John Doe II continues to be involved with state government in his capacity as a registered lobbyist with the legislative and executive branches. The information regarding John Doe II is not of a private nature and must be disclosed.

To the extent both appellants argue that the information should not be disclosed because Jane Doe II—the primary person interviewed in the file—wanted the information to remain confidential, this argument is without merit. Indeed, it is quite clear that Jane Doe II was only concerned that her job would be in jeopardy. This risk was averted by the circuit court when it ordered that Jane Doe II's name and identifying information be redacted. Further, her desire for confidentiality did not create a privacy interest for the appellants. *See Lexington–Fayette Urban County Gov't v. Lexington Herald–Leader*, 941 S.W.2d 469, 472–73 (Ky.1997) (Finding that even "a confidentiality clause reached by the agreement of parties to litigation cannot in and of itself create an inherent right to privacy superior to and exempt

from the statutory mandate for disclosure contained in the Open Records Act.").

## Conclusion

The information contained in the investigation file is not exempt from disclosure under the Act. The public interest in ensuring that the government is carrying out its functions is strong. This interest outweighs any privacy interest the appellants might have in the information. Therefore, the decision of the circuit court is affirmed.

ALL CONCUR.