2011 OK 68

OKLAHOMA PUBLIC EMPLOYEES ASSOCIATION, Plaintiff/Appellant,

v.

STATE of Oklahoma ex rel. OKLAHOMA OFFICE OF PERSONNEL MANAGE-MENT, Defendant/Appellee.

Oklahoma Public Employees Association, Plaintiff/Appellant,

v.

State of Oklahoma ex rel. Oklahoma Office of State Finance, Defendant/Appellee.

Oklahoma Public Employees Association, Plaintiff/Appellee

and

State of Oklahoma ex rel. Oklahoma Office of Personnel Management, Defendant/Appellee

and

Oklahoma Public Employees Association, Plaintiff/Appellee

and

State of Oklahoma ex rel. Oklahoma Office of State Finance, Defendant/Appellee,

v.

World Publishing Company and The Oklahoma Publishing Company, Intervenors/Appellants.

Nos. 108,839, 108,841.

Supreme Court of Oklahoma.

June 28, 2011.

Rehearing Denied Nov. 28, 2011.

Kevin R. Donelson, Carole L. Houghton, Fellers, Snider, Blankenship, Bailey & Tippens, P.C., Oklahoma City, Oklahoma, for Oklahoma Public Employees Association.

Stephen J. Krise, Oklahoma Office of Attorney General, Oklahoma City, Oklahoma, for State ex rel. Oklahoma Office of Personnel Management and Oklahoma Office of State Finance.

Michael Minnis, Doerner, Saunders, Daniel & Anderson, L.L.P., Oklahoma City, Oklahoma, and S. Douglas Dodd, Tulsa, Oklahoma, for the Oklahoma Publishing Company d/b/a The Oklahoman.

J. Schadd Titus, Titus Hillis Reynolds Love Dickman & McCalmon, Tulsa, Oklahoma, for World Publishing Company d/b/a Tulsa World.

S. Douglas Dodd, Doerner, Saunders, Daniel & Anderson, L.L.P. Tulsa, Oklahoma, for Amici Curiae Griffin Television OKC, LLC, Griffin Television Tulsa, LLC, Oklahoma Press Association, Reporters Committee For Freedom of the Press, and FOI Oklahoma.

Gary J. James, Gary J. James & Associates, P.C., Oklahoma City, Oklahoma, for Oklahoma State Troopers Association.

Wellon B. Poe, Joseph A. Claro, Oklahoma Department of Public Safety, Oklahoma City, Oklahoma, for Oklahoma Department of Public Safety.

Thomas E. Prince, Prince Law Office, P.C., Edmond, Oklahoma, for Amicus Curiae, CompSource Oklahoma.

Robert D. Nelon, Jon Epstein, Hall, Estill, Hardwick, Gable, Golden and Nelson, Oklahoma City, Oklahoma, for Amici Curiae Local TV, LLC d/b/a KFOR–TV (Channel 4) Oklahoma City, Ohio/Oklahoma Hearst Television, Inc. d/b/a KOCO–TV (Channel 5) Oklahoma City; Sinclair Broadcast Group, Inc. d/b/a KOKH–TV (Channel 25) Oklahoma City, Scripps Media, Inc. d/b/a KJRH–TV (Channel 2) Tulsa, KTUL, LLC d/b/a KTUL–TV (Channel 8) Tulsa, Oklahoma Association of Broadcasters, Investigative Reporters and Editors, Inc., Radio Television Digital News Association.

Nancy Pellow, Oklahoma City, Oklahoma, Pro Se.

## PER CURIAM:

¶ 1 Although the above styled and numbered causes were consolidated in the trial court, they were appealed under separate numbers. On October 26, 2010, an order issued in case No. 108,841 making the causes companion cases for purposes of the appeal and requiring that separate records be filed. Today, we withdraw our order of October 26th and consolidate the matters for resolution by a single opinion.[1]

¶ 2 One first impression issue is common to both causes: whether public employees' dates of birth are open records, subject to public disclosure, under the Open Records Act. The second first impression issue, raised only in cause No. 108,841, is whether employee identification numbers are also public records which may be released. Both questions require us to consider whether the information release would be a "clearly unwarranted invasion" of Oklahoma's public service, state employees' personal privacy under 51 O.S. Supp.2005 § 24A.7(A)(2).[2] Because the is-

1. Rule 1.27(d), Supreme Court Rules, 12 O.S. Supp.2008 providing in pertinent part:

"... The appellate court has the discretion *sua sponte,* or upon motion of a party, to consider any appeals including one or more appeals governed by Rule 1.36 as companion or consolidated appeals." [Emphasis in original.]

2. Title 51 O.S. Supp.2005 § 24A.7 providing in pertinent part:

"A. A public body may keep personnel records confidential:

... 2. Where disclosure would constitute a clearly unwarranted invasion of personal privacy such as employee evaluations, payroll deductions, employment applications submitted by persons not hired by the public body, and transcripts from institutions of higher education maintained in the personnel files of certified public school employees; provided, however, that nothing in this subsection shall be construed to exempt from disclosure the degree obtained and the curriculum on the transcripts of certified public school employees...."

sues presented are questions of law, our review is *de novo*.[3]

¶ 3 We determine that the legislative language utilized in 51 O.S. Supp.2005 § 24A.7(A)(2) indicates the Legislature intended to provide a non-exclusive list of examples of information, release of which may amount to a clearly unwarranted invasion of State employees' personal privacy; and, that where a claim is made that disclosure would constitute a clearly unwarranted invasion of personal privacy within the meaning of the statute, application of a case-by-case balancing test is utilized to determine whether personal information is subject to release. Here, the information requested could result in cases of identity theft and compromise of governmental computer systems yet bring little, if any, information to public attention which would enlighten Oklahoma citizens as to how their government runs, performs, or spends their tax dollars. Therefore, we determine that when the balancing test is applied to the facts presented, release of birth dates and employee identification numbers of State employees "would constitute a clearly unwarranted invasion of personal privacy" under 51 O.S. Supp.2005 § 24A.7(A)(2).[4] Our decision is supported by the reasoning of: the United States Supreme Court and other federal courts considering virtually identical language found in the Federal Freedom of Information Act (FOIA); the overwhelming majority of state courts construing language similar to that found in Oklahoma's statute; and the Attorney General's persuasive opinion.

## RELEVANT FACTS AND PROCEDURAL BACKGROUND

¶ 4 In response to a request by Senator Debbe Leftwich, the AG issued an opinion on December 8, 2009. The opinion provides that: 1) a public body has discretion to determine that disclosing a personnel record indicating the date of birth of the public employee is an unwarranted invasion of the employee's personal privacy under the Open Records Act, 51 O.S. Supp.2005 § 24A.7(A)(2); 2) in making the determination, the public body may weigh the employee's interest in non-disclosure against the public's interest in having access to the record; and 3) where the employee's interest in non-disclosure is dominant, birth dates should be kept confidential while releasing the balance of the requested personnel record.[5]

D. Public bodies shall keep confidential the home address, telephone numbers and social security numbers of any person employed or formerly employed by the public body."

3. *White v. Lim*, 2009 OK 79, fn. 5, 224 P.3d 679; *Welch v. Crow*, 2009 OK 20, ¶ 10, 206 P.3d 599; *Stump v. Cheek*, 2007 OK 97, ¶ 9, 179 P.3d 606; *Citizens Against Taxpayer Abuse, Inc. v. City of Oklahoma City*, 2003 OK 65, ¶ 6, 73 P.3d 871. See also, *Data Tree, LLC v. Meek*, note 36, infra; *Graham v. Alabama State Employees Ass'n*, see note 57, infra.

4. Our decision today does not create a privacy interest in violation of 51 O.S.2001 § 24A.2 providing that the "Oklahoma Open Records Act shall not create, directly or indirectly, any rights of privacy or any remedies for violation of any rights of privacy; nor shall the Oklahoma Open Records Act, except as specifically set forth in the Oklahoma Open Records Act, establish any procedures for protecting any person from release of information contained in public records." We merely apply the exception, provided by the Oklahoma Legislature providing for refusing disclosure where a release would constitute a "clearly unwarranted invasion of personal privacy" pursuant to 51 O.S. Supp.2005 § 24A.7(A)(2), see note 2, supra.

5. A.G. Opin. 09–33. Although not relevant to the cause presented, the opinion also provides that: 1) a vital statistics record, such as a birth certificate, is confidential and may not be disclosed except in specific circumstances as provided by the Public Health Code but that these provisions do not make confidential the birth date of an employee of a public body that is contained in any record that is not a vital statistics record; 2) the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721–2725, does not make the birth date of an employee of a public body confidential; and 3) a public body may keep confidential a record indicating an employee's name placed on administrative leave with pay if, under the body's personnel policies, the action constitutes neither a final or disciplinary action, nor a final action resulting in loss of pay, suspension, demotion of position, or termination pursuant to 51 O.S. Supp. § 24A.7(B). The opinion also indicated that an agency could, but was not required to, give notice to employees allowing them to assert a privacy interest in the release of birth dates and employee identification numbers. CompSource contends that employees have no right to notice and an opportunity to object to a document's disclosure. This issue was considered in *City of Lawton v. Moore*, 1993 OK 168, 868 P.2d 690 holding that the Legislature had superseded

¶ 5 This cause arises out of two requests to obtain public information under the Open Records Act. On February 19, 2010, the Oklahoman submitted a request to the OPM specifically seeking disclosure of the names and corresponding birth dates of all state employees. The Tulsa World filed a similar request on May 26, 2010, also seeking release of employee identification numbers. The OPEA filed two petitions in district court on March 29th and June 21st, respectively. The first filing named as defendant the OPM; and the second suit was filed against the OSF. A legislative staff member and other entities were allowed to intervene in the first suit and the trial court allowed an *amicus* filing.[6] When the two suits were consolidated, the Tulsa World was allowed to intervene.

¶ 6 From July through September, 2010, all parties filed for summary judgment. The trial court sustained the summary judgment motions of OPM and OSF in an order filed on September 21st. It found that: employee identification numbers were not subject to disclosure by any state agency; the Attorney General correctly stated the law regarding the release of state employees' birth dates requiring a balancing test to determine if such a release amounted to an unwarranted invasion of personal privacy; and utilization of the balancing test did not violate the equal protection clause. The trial court also determined that the records of legislative staff are protected from release by 51 O.S. Supp.2005 § 24A.3(2).[7]

by statute an earlier decision in *Tulsa Tribune Co. v. Oklahoma Horse Racing Comm'n,* 1986 OK 24, 735 P.2d 548. Under the version of the Open Records Act considered in *Tulsa Tribune,* we interpreted the Act, as then cast, to require custodians of public records to give notice and the opportunity to be heard to any person whose interests would be affected by disclosure of public records. In *Moore,* we acknowledged the change in statutory language following the decision in *Tulsa Tribune* providing that "public bodies do not need to follow any procedures for providing access to public records except those specifically required by the Oklahoma Open Records Act." Title 51 O.S.2001 § 24A.2. In consideration of this statutory change, still in effect today, we held that the Open Records Act did not grant public employees a right to notice and hearing, or any other procedural protection. Conversely, as CompSource recognizes, the public body must make the decision on disclosure. Just as the Open Records Act does not grant public employees procedural protections, it does not prohibit an agency from utilizing tools in its attempt to discern whether certain personal information should be released. In regard to the allegations that such notification efforts might treat individual employees differently creating an equal protection violation, we note only that, generally, this Court does not address a party's asserting vicariously the constitutional rights of others. *Gens v. Casady School,* 2008 OK 5, fn. 28, 177 P.3d 565; *Barzellone v. Presley,* 2005 OK 86, fn. 32, 126 P.3d 588; *Forest Oil Corp. v. Corporation Comm'n,* 1990 OK 58, ¶ 31, 807 P.2d 774. Furthermore, our determination that birth dates and employee identification numbers are not subject to release makes consideration of the constitutional argument unnecessary.

6. Nancy Pellow, the legislative staffer, appeared pro se. The Oklahoma State Troopers Association and the Oklahoma Department of Public

Safety appeared as intervening plaintiffs. Comp-Source Oklahoma filed an *amicus brief.*

7. Title 51 O.S. Supp.2005 § 24A.3 providing in pertinent part:

"As used in this act:
... 2. 'Public body' ... does not mean judges, justices, the Council on Judicial Complaints, the Legislature, or legislators ..."

This exception is qualified to the extent that records are kept for the receipt and expenditure of any public funds. See, 51 O.S.2001 § 24A.4. Intervenor Nancy Pellow claims that, as a Senate staff member, she is entitled to the protection of the Open Records Act legislative exemption. Our determination that birth dates and employee identification numbers are not subject to release here makes determination whether all legislative staff employees records are exempt from release under § 24A.3, this note, supra, unnecessary. Nevertheless, we note that the Attorney General has determined that, except when the document is created by a third-party public body or official, the Open Records Act does not require legislators to disclose documents in their possession created by third parties. AG Opin. 08–19. Although we have not had occasion to determine whether the exemption for the Legislature and legislators extends to their staff, we have acknowledged the exemption and noted its application to judges and Justices, generally. *Nichols v. Jackson,* 2002 OK 65, ¶ 1(12), 55 P.3d 1044. Furthermore, in an Open Records Request to the Court directed at staff-produced documents, we determined that records of judges and Justices are specifically excluded from the requirements of the Open Meetings Act and that judicial privilege shields the internal decisional process of the Court and internal court documents prepared by court personnel. *Wallace v. Honorable Daman H. Cantrell,* No. 107,300, Order of October 1, 2009 relying on *Goetz v. Crosson,* 41 F.3d 800, 805

¶ 7 Appeals were filed in both causes in October of 2010. Shortly thereafter, we were asked to retain the causes and to stay the effectiveness of the trial court's order. On December 9th, the motions to retain were granted. That same month, the motion to stay enforcement of the trial court's order was granted effective until further order of the Court. On January 11, 2011, the causes were ordered stayed during the pendency of the appeal.

## PRELIMINARY CONSIDERATIONS

¶ 8 Two preliminary issues which must be considered before we may determine the primary questions presented: whether the release of birth dates and employee identification numbers constitutes a "clearly unwarranted invasion of personal privacy" within the meaning of 51 O.S. Supp.2005 § 24A.7(A)(2). The first is whether these matters may be included within the confines of the statutory language itself. Second, if they may fall within the confines of the statutory exemption, what test is employed to determine whether release is appropriate.

¶ 9 1) **Title 51 O.S. Supp.2005 § 24A.7(A)2 contains a non-exclusive list of examples of information, release of which, the Legislature considers to be a clearly unwarranted invasion of State employees' personal privacy.**

■ ¶ 10 The OPEA contends that the birth dates and employee identification numbers of state employees are exempt from disclosure pursuant to 51 O.S. Supp.2005 § 24A.7(A)(2)[8] allowing public bodies to keep records confidential where disclosure would constitute a clearly unwarranted invasion of personal privacy. The publishers disagree, asserting that the only matters the Legislature considered as those which would invade a public employee's privacy are those specifically listed in the statute, *i.e.* employee evaluations, payroll deductions, employment applications submitted by unsuccessful job applicants, and school employees' transcripts from institutions of higher education, coupled with the *per se* exemptions of subsection D,[9] employees' home addresses, telephone numbers, and social security numbers.

■ ¶ 11 In determining whether a statute applies to a given set of facts, we focus on legislative intent[10] which controls statutory interpretation.[11] Intent is ascertained from the whole act in light of its general purpose and objective[12] considering relevant provisions together to give full force and effect to each.[13] The Court presumes that the Legislature expressed its intent and that it intended what is expressed[14] in statutory enactments and that it does not perform vain and useless acts in carrying out its legislative drafting responsibilities.[15] We employ rules of statutory construction only where the legislative intent cannot be ascertained from the statutory language.[16]

(2nd Cir.1994), *cert. denied*, 516 U.S. 821, 116 S.Ct. 80, 133 L.Ed.2d 39 (1995).

8. Title 51 O.S. Supp.2005 § 24A.7, see note 2, supra.

9. Title 51 O.S. Supp.2005 § 24A.7(D), see note 2, supra.

10. *Tyler v. Shelter Mut. Ins. Co.*, 2008 OK 9, ¶ 12, 184 P.3d 496; *McClure v. ConocoPhillips Co.*, 2006 OK 42, ¶ 12, 142 P.3d 390; *Nealis v. Baird*, 1999 OK 98, ¶ 55, 996 P.2d 438.

11. *Smicklas v. Spitz*, 1992 OK 145, ¶ 8, 846 P.2d 362; *Clifton v. Clifton*, 1990 OK 88, ¶ 7, 801 P.2d 693; *Fuller v. Odom*, 1987 OK 64, ¶ 4, 741 P.2d 449.

12. *Tyler v. Shelter Mut. Ins. Co.*, see note 10, supra; *McSorley v. Hertz Corp.*, 1994 OK 120,

6, 885 P.2d 1343; *Oglesby v. Liberty Mut. Ins. Co.*, 1992 OK 61, ¶ 8, 832 P.2d 834.

13. *Hill v. Board of Education*, see note 15, infra; *Haney v. State*, 1993 OK 41, ¶ 5, 850 P.2d 1087; *Public Serv. Co. of Oklahoma v. State ex rel. Corp. Comm'n*, 1992 OK 153, ¶ 8, 842 P.2d 750.

14. *Minie v. Hudson*, 1997 OK 26, ¶ 7, 934 P.2d 1082; *Fuller v. Odom*, see note 11, supra; *Darnell v. Chrysler Corp.*, 1984 OK 57, ¶ 5, 687 P.2d 132.

15. See, *Strong v. Laubach*, 2004 OK 21, ¶ 11, 89 P.3d 1066; *Hill v. Board of Education*, 1997 OK 107, 1997 OK 111, ¶ 12, 944 P.2d 930.

16. *Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City*, 1995 OK 62, ¶ 5, 901 P.2d 800, *cert. denied*, 516 U.S. 1029, 116 S.Ct. 674, 133 L.Ed.2d 523 (1995); *Affiliated Mgt. Corp. v. Oklahoma Tax Comm'n*, 1977 OK 183, 570 P.2d 335.

¶ 12 In subsection A(2) of title 51 O.S. Supp.2005 § 24A.7, the Legislature directed public bodies to keep personnel records confidential, disclosure of which "would constitute a clearly unwarranted invasion of personal privacy **such as**" employee evaluations, payroll deductions, employment applications of unsuccessful candidates, and transcripts from institutions of higher education of school employees. Subsection D of the same section provides that public bodies "**shall keep** confidential" home addresses, telephone numbers, and social security numbers of public servants. The examples given in subsection A(2) and the specifically enumerated items listed in subsection D are *per se* prohibited from disclosure.[17]

¶ 13 When the Legislature sought to specifically enumerate items that it intended to be kept confidential in all instances, it used mandatory language[18] providing that public bodies "shall keep confidential the home address, telephone numbers and social security numbers" of its employees. Nevertheless, its utilization of the phrase "**such as**" in a statutory provision is not a term of strict limitation. Rather, it **is utilized to indicate that there are other matters intended to be included within the statutory limits which are not specifically enumerated by the legislative language.**[19] The phrase indicates a descriptive, non-exclusive list of matters of the same or like kind.[20]

¶ 14 Undoubtedly, the Legislature provided examples of information in 51 O.S. Supp.2005 § 24A.7(A)(1), release of which it would consider to be a clearly unwarranted invasion of personal privacy. **In utilizing the term "such as" preceding the examples, it left open for consideration whether other matters of like or similar import**

might also be withheld providing a general exemption when, as here, a public body asserts that the requested information constitutes a clearly unwarranted invasion of personal privacy.[21] Therefore, we determine that 51 O.S. Supp.2005 § 24A.7(A)(2) contains a non-exclusive list of examples of information, release of which the Legislature considers to be clearly unwarranted invasions of State employees' personal privacy.

**¶ 15 2) Where a claim is made that disclosure of information under 51 O.S. Supp.2005 § 24A.7(A)(2) would constitute a clearly unwarranted invasion of personnel privacy, application of a case-by-case balancing test is utilized to determine whether the information is subject to release.**

¶ 16 The OPEA and OSF advocate the adoption of a balancing test for determination of whether birth dates and employee identification numbers are subject to release under the Open Records Act. Under such a test, the public body must weigh the employees' interest in non-disclosure against the public's interest in obtaining the information.

¶ 17 The publishers argue that application of a balancing test to determine whether a public employee's personal information outweighs the public's right to know is inappropriate. They contend that, if such a test is utilized, the news-gathering functions under the First Amendment would greatly overcome only a slight imposition on the personal privacy of public employees. The publishers point to a Court of Criminal Appeals' decision and to a Court of Civil Appeals' opinion providing that no balancing test may be utilized as support for their allegations. Those

---

17. *Chicago Tribune Co. v. Board of Education of the City of Chicago,* 332 Ill.App.3d 60, 265 Ill. Dec. 910, 773 N.E.2d 674 (2002), *appeal denied,* 201 Ill.2d 562, 271 Ill.Dec. 923, 786 N.E.2d 181 (2002).

18. The term "may" is ordinarily construed as permissive while "shall" is commonly considered to be mandatory. *MLC Mortgage Corp. v. Sun America Mortgage Co.,* 2009 OK 37, fn. 17, 212 P.3d 1199; See also, *Osprey LLC v. Kelly–Moore Paint Co., Inc.,* 1999 OK 50, ¶ 14, 984 P.2d 194; *Shea v. Shea,* 1975 OK 90, ¶ 10, 537 P.2d 417.

19. *Donovan v. Anheuser–Busch, Inc.,* 666 F.2d 315 (8th Cir.1981).

20. *In re Mandel's Will,* 143 N.Y.S.2d 339 (1955); *Erwin v. Steele,* 228 S.W.2d 882 (Tex.Civ.App. 1950); *Charles Behlen Sons' Co. v. Ricketts,* 30 Ohio App. 167, 6 Ohio Law Abs. 543, 164 N.E. 436 (1928).

21. *Chicago Tribune Co. v. Board of Education of the City of Chicago,* see note 17, supra.

cases and the publishers' assertions are unconvincing.

¶ 18 Two Oklahoma cases support the contentions that utilization of a balancing test to determine whether employee birth dates or identification numbers are subject to release under the Open Records Act is inappropriate. Nevertheless, at best, those decisions are persuasive only and do not bind our independent review of the issue.

¶ 19 *Nichols v. Jackson*, 2001 OK CR 35, 38 P.3d 228 involved a petition for the sealing of records in a criminal proceeding. Although the cause was first filed in this Court, exercising our superintending control,[22] we transferred the matter and certified the question to the Court of Criminal Appeals. As stated, the issue certified to the Criminal Court required that the threshold issue to be settled was whether the criminal defendant's request for wholesale closure of the proceedings or sealing of records was necessary to protect the defendant's right to a fair trial.

¶ 20 The Criminal Court held that the First Amendment right of access by the press to non-confidential court records precluded wholesale closure of the proceedings or sealing of the records. In reaching this result, provisions of the Open Records Act were considered. Relying on a Court of Civil Appeals' case, *State ex rel. Oklahoma State Bd. of Medical Licensure and Supervision v. Migliaccio*, 1996 OK CIV APP 37, 917 P.2d 483,[23] the Criminal Court determined that the Open Records Act contains no provision allowing a court to balance an individual's interest in having records remain private and the public's interest in having access to the records.

¶ 21 In the same breath that the Court of Criminal Appeals indicated no balancing test would be allowed, it stated:

The Legislature has determined by statute that the public's interest is greater, except where specific statutory exemption is given.... However, **such statutory provisions are always subject to interpretation to ensure compliance with constitutionally guaranteed rights.** [Citations omitted. Emphasis supplied.]

Thereafter, in answering the question certified, the Criminal Court made it clear that it had, despite its pronouncement concerning *Migliaccio*, balanced Nichols' rights to counsel, due process, and fair trial against the public's right to know. The opinion provides in pertinent part:

The issues of closure of hearings and the sealing or [sic] records is a question of law, which in each instance is driven by the facts and circumstances of the particular case. The issue cannot be answered in a *carte blanche* approach and should be addressed on an ongoing basis based upon the current status of the proceedings. In *Press–Enterprise Co. v. Superior Court of California for Riverside County*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) and *United States v. McVeigh*, 918 F.Supp. 1452 (W.D.Okla.1996), a hierarchy of rights is set forth flowing from our constitutions and statutory enactments. The right of access protected by the First Amendment to the United States Constitution is a qualified right. When that qualified right con-

---

22. The Okla. Const. art. 7, § 4 providing in pertinent part:

"The appellate jurisdiction of the Supreme Court shall be coextensive with the State and shall extend to all cases at law and in equity; except that the Court of Criminal Appeals shall have exclusive appellate jurisdiction in criminal cases until otherwise provided by statute and in the event there is any conflict as to jurisdiction, the Supreme Court shall determine which court has jurisdiction and such determination shall be final. The original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all Agencies, Commissions and Boards created by law...."

23. In *State ex rel. Oklahoma State Bd. of Medical Licensure and Supervision v. Migliaccio*, 1996 OK CIV APP 37, 917 P.2d 483 a physician was disciplined by the Board of Medical Licensure and Supervision, following convictions in relation to filing of fraudulent medical claims. After the convictions were reversed, the physician sought expungement or sealing of records related to the disciplinary action. The appellate court held that the Board had no authority to either expunge or seal the records documents its actions in the physician's case. In reaching its determination, the Court of Civil Appeals stated that the Open Records Act does not allow the court to balance the individual's interests in records remaining private against the public's interest in access to records.

flicts with the constitutional guarantees afforded to a person charged in a criminal proceeding, it is the rights of the individual which must be protected. **The cases relied upon in this opinion set out the analysis to be utilized to ensure the balancing of those rights, which will ensure a criminal defendant is afforded his constitutional rights to counsel, due process and fair trial.** [Italics in original. Emphasis supplied.]

¶ 22 The Court of Criminal Appeals has exclusive appellate jurisdiction over criminal cases.[24] Nevertheless, unlike this Court, it has no general superintending power over the lower courts and no jurisdiction to review our decisions.[25] Its opinion regarding the Open Records Act relies on a Court of Civil Appeals' opinion with merely persuasive value;[26] and, the opinion itself appears internally inconsistent, decrying the application of a balancing test yet ultimately utilizing the same test to determine the cause.[27]

¶ 23 It is this Court's responsibility to apply a general analysis of the constitutional and statutory norms applicable here.[28] Therefore, we determine that *Nichols* is inapposite to our decision today and specifically overrule *State ex rel. Oklahoma State Bd. of Medical Licensure and Supervision v. Migliaccio*, 1996 OK CIV APP 37, 917 P.2d 483, to the extent that it conflicts with this opinion.

¶ 24 The AG recommended public bodies utilize a balancing test weighing the public's right to know against the employee's right to privacy in determining whether public employees' birth dates should be released. In analyzing the weight to be given to the Attorney General's opinion, we note that, like opinions of the Court of Criminal Appeals and the Court of Appeals, the writings are considered as persuasive authority. Here, however, the Attorney General's analysis carries more weight in determining the issues before the Court. It does so because the Legislature has not acted since the opinion was promulgated. Undoubtedly, it did not do so because it understood that this Court considers the Legislature's silence as acquiescence or approval of the law as expounded in an Attorney General opinion.[29] Therefore, we presume that the Legislature agrees with the Attorney General that it may be necessary to balance the public's right to know against the employee's right to privacy when it is alleged that the information requested would constitute a clearly unwarranted invasion of personal privacy under 51 O.S.Supp. 2005 § 24A.7(A)(2).

¶ 25 The United States Supreme Court has recognized the privacy interest in keeping personal facts away from the public eye. It has also acknowledged that, in some instances, the duty to avoid unwarranted disclosures is rooted in the Constitution.[30] Even where an event is not wholly private, the Court accepts that an individual may have some interest in limiting disclosure or dissemination of the information.[31]

---

**24.** The Okla. Const. art. 7, § 4, see note 22, supra; *Movants to Quash Multicounty Grand Jury Subpoena v. Dixon*, 2008 OK 36, ¶ 6, 184 P.3d 546; *State v. Blevins*, 1992 OK CR 4, ¶ 2, 825 P.2d 270.

**25.** The Okla. Const. art. 7, § 4, see note 22, supra; *Movants to Quash Multicounty Grand Jury Subpoena v. Dixon*, see note 24, supra.

**26.** Opinions released for publication by order of the Court of Civil Appeals are persuasive only and lack precedential effect. Rule 1.200, Supreme Court Rules, 12 O.S.2001, Ch. A5, App. 1; 20 O.S.2001 §§ 30.5 and 30.14.

**27.** Holdings in cases released by the Court of Criminal Appeals are not binding upon this Court although the rules announced therein may be considered persuasive. *One Chicago Coin's*

*Play Boy Marble Board, No. 19771 v. State ex rel. Adams*, 1949 OK 251, ¶ 9, 212 P.2d 129.

**28.** See, *Movants to Quash Multicounty Grand Jury Subpoena v. Dixon*, note 24, supra.

**29.** *National Cowboy Hall of Fame & Western Heritage Center v. State ex rel. Oklahoma Human Rights Comm'n*, 1978 OK 76, ¶ 11, 579 P.2d 1276; *Terry v. Edgin*, 1977 OK 35, ¶ 9, 561 P.2d 60.

**30.** *United States Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 109 S.Ct. 1468, 1480, 103 L.Ed.2d 774 (1989); *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 872, 51 L.Ed.2d 64 (1977).

**31.** *United States Dept. of Justice v. Reporters Committee for Freedom of the Press*, see note 30, supra; *Hines v. Commonwealth of Kentucky*, see note 51, infra.

¶ 26 The Federal Freedom of Information Act (FOIA) contains almost identical language to Oklahoma's Open Records Act providing that "files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" may not be released for public scrutiny. In considering the federal act's language, **the United States Supreme Court has determined that such statutory language requires the implementation of a balancing test where the individual's right to privacy is weighed against the public's right to know.**[32]

¶ 27 A number of other federal and state courts considering statutory language similar to that found in 51 O.S. Supp.2005 § 24A.7(A)(2) and in the FOIA align themselves with the Supreme Court's reasoning. These courts recognize that once a protectable privacy interest is established, proper application of the Open Records Act **requires a comparative weighing of the antagonistic interests**—here, the privacy interest of the public servant versus the policy of openness for the public good.[33] These courts acknowledge that the interests at issue must be considered on a case-by-case basis to determine whether the public's right to know predominates over the public employee's privacy interest. Where a privacy interest is established and disclosure would not significantly serve the principal purpose of disclosure, *i.e.* ensuring public confidence in government by increasing the access of the public to government and to its decision-making processes, disclosure is inappropriate.[34]

¶ 28 We find the analysis of the Supreme Court and other jurisdictions with statutory language similar to that found in 51 O.S. Supp.2005 § 24A.7(A)(2) persuasive. Therefore, we align ourselves with those courts and with the reasoning of the Attorney General and determine that where a claim is made that disclosure of information under 51 O.S. Supp.2005 § 24A.7(A)(2) would constitute a clearly unwarranted invasion of personal privacy, application of a case-by-case balancing test should be utilized to determine whether personal information is subject to release.

¶ 29 **Under the facts presented, where significant privacy interests are at stake while the public's interest either in employee birth dates or employee identification numbers is minimal, release of such information "would constitute a clearly unwarranted invasion of personal privacy" under 51 O.S. Supp.2004 § 24A.7(A)(2).**

¶ 30 The Supreme Court has held that information such as place of birth, **date of birth,** date of marriage, employment history, and comparable data are protected from disclosure as matters which constitute a clearly unwarranted invasion of personal privacy.[35] The vast majority of courts considering the issue of whether birth dates should be excluded from public disclosure under statutory language similar to that found in 51 O.S. Supp.2005 § 24A.7(A)(2) and in the FOIA align themselves with the Supreme Court's reasoning and hold that "disclosure would

**32.** *Department of Air Force v. Rose*, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976).

**33.** *Oliva v. United States*, see note 36, infra; *Texas Comptroller of Public Accounts v. Attorney General of Texas*, see note 36, supra; *Data Tree, LLC v. Meek*, see note 36, infra; *Scottsdale Unified School District v. KPNX Broadcasting Co.*, 191 Ariz. 297, 955 P.2d 534 (1998); *Kentucky Bd. of Examiners of Psychologists v. Courier–Journal & Louisville Times Co.*, 826 S.W.2d 324 (Ky. 1992); *Versaci v. Superior Court*, 127 Cal.App.4th 805, 26 Cal.Rptr.3d 92 (2005), *rehearing denied* (2005), *review denied* (2005); *Chicago Tribune Co. v. Board of Educ. of the City of Chicago*, see note 17, supra; *Doe v. Registrar of Motor Vehicles*, 26 Mass.App.Ct. 415, 528 N.E.2d 880; *Mullin v. Detroit Police Dept.*, 133 Mich.App. 46, 348 N.W.2d 708 (1984). See also, *Graham v. Alabama State Employees Ass'n*, note 3, supra [Rejected balancing test but instituted similar test based on "rule of reason."] But see, *Tacoma Public Library v. Woessner*, note 37, infra; *Capital City Press v. East Baton Rouge Parish Metropolitan Council*, 96–1979, 696 So.2d 562 (La. 1997).

**34.** *Data Tree LLC v. Meek*, see note 36, infra; *Valentine v. Personnel Cabinet*, see note 36, infra.

**35.** *United States Dept. of Justice v. Reporters Committee for Freedom of the Press*, see note 30, supra; *United States Dept. of State v. Washington Post Co.*, 456 U.S. 595, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982). See also, *Sherman v. United States Dept. of the Army*, 244 F.3d 357 (5th Cir. 2001).

constitute a clearly unwarranted invasion of personal privacy."[36]

¶ 31 Similarly, employee identification numbers, when balanced against the public's right to know, have been determined to be information whose release would constitute a clearly unwarranted invasion of personal privacy.[37] Such information has been found to provide little, if any, knowledge to the public which would provide a better understanding of routine day-to-day governmental operations.[38] Publication of the numbers has been considered to be highly offensive, because the disclosure could lead to public scrutiny of individuals concerning information unrelated to any governmental operation while consti-

tuting impermissible invasions of privacy.[39] Furthermore, as has been argued here, public employees' identification numbers may provide unauthorized access to information contained on government computers.[40] Finally, utilization of employee identification numbers has been shown to provide additional insight into financial dealings leaving individuals subject to identity theft.[41]

¶ 32 Since September 11, 2001, the ramifications of identity theft have proven much more grave than previously thought. Identity theft, a huge problem in financial fraud and theft cases, now has implications for national security.[42] The growing problem of

36. *Associated Press v. United States Dept. of Justice*, see note 51, infra; *Morley v. United States Central Intelligence Agency*, 699 F.Supp.2d 244 (D.D.C.2010); *Coleman v. Lappin*, 680 F.Supp.2d 192 (D.D.C.2010); *Salas v. Office of Inspector General*, 577 F.Supp.2d 105 (D.D.C.2008); *In Defense of Animals v. Nat'l Inst. of Health*, 543 F.Supp.2d 70 (D.D.C.2008); *Judicial Watch, Inc. v. Department of Justice*, 361 U.S.App.D.C. 183, 365 F.3d 1108 (2004); *Oliva v. United States*, 756 F.Supp. 105 (E.D.N.Y.1991); *Texas Comptroller of Public Accounts v. Attorney General of Texas*, 354 S.W.3d 336 (Tex.2010), *rehearing denied* (2011); *Data Tree, LLC v. Meek*, 279 Kan. 445, 109 P.3d 1226 (2005); *Clymer v. City of Cedar Rapids*, 601 N.W.2d 42 (Iowa 1999); *Scottsdale Unified School Dist. v. KPNX Broadcasting Co.*, see note 33, supra; *Valentine v. Personnel Cabinet*, 322 S.W.3d 505 (Ky.App.2010); *Hearst Corp. v. State of New York, Office of State Comptroller*, 24 Misc.3d 611, 882 N.Y.S.2d 862 (2009); *Graham v. Alabama State Employees Ass'n*, see note 57, infra; *Garden Grove Police Dept. v. Superior Court*, 89 Cal.App.4th 430, 107 Cal.Rptr.2d 642 (2001); *Mullin v. Detroit Police Dept.*, see note 33, supra; *Doe v. Registrar of Motor Vehicles*, see note 33, supra. See also, *Department of Justice v. Reporters Committee*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989); *Justice v. Fuddy*, 253 P.3d 665 (Hawai'i App.2011) [Citizen's strong desire to personally verify President's eligibility to hold office did not constitute "compelling circumstances affecting health or safety of any individual.]; *Providence Journal Co. v. Kane*, 577 A.2d 661 (R.I.1990); Annot., "What constitutes personal matters exempt from disclosure by invasion of privacy exemption under state freedom of information act?", 26 A.L.R.4th 666 (1983).

37. *United America Financial, Inc. v. Potter*, 531 F.Supp.2d 29 (D.D.C.2008); *Judicial Watch, Inc. v. United States Dept. of Commerce*, 337 F.Supp.2d 146 (D.D.C.2004); *Tacoma Public Library v. Woessner*, 90 Wash.App. 205, 951 P.2d 357 (1998) [Modified on rehearing on other grounds.]; *Small v. Internal Revenue Serv.*, 820

F.Supp. 163 (D.N.J.1992). See also, *Painting & Drywall Work Preservation Fund, Inc. v. Department of Housing & Urban Development*, 936 F.2d 1300 (D.C.Cir.1991); *Metropolitan Life Ins. Co. v. Usery*, 426 F.Supp. 150 (D.D.C.1976), *cert. denied*, 431 U.S. 924, 97 S.Ct. 2198, 53 L.Ed.2d 238 (1977), *aff'd*, 736 F.2d 727 (1984); *King County v. Sheehan III*, 114 Wash.App. 325, 57 P.3d 307 (2002); F. Komuves, "We've Got Your Number: An Overview of Legislation and Decisions to Control the Use of Social Security Numbers as Personal Identifiers," 16 J. Marshall J. Computer & Info. L. 529 (1998). But see, *Sun–Sentinel Co. v. United States Dept. of Homeland Security*, 431 F.Supp.2d 1258 (S.D.Fla.2006), *aff'd*, 489 F.3d 1173 (11th Cir.2007) [Employee identification numbers released for FEMA inspectors suspected of criminal activity. Factor of suspected activity sufficient to outweigh privacy interests.].

38. *Judicial Watch, Inc. v. United States Dept. of Commerce*, see note 37, supra; *Hale v. Department of Justice*, 973 F.2d 894 (10th Cir.1992). See also, S. Burgess, "Access to Federal Government Records Under FOIA," 05–12 Immigr. Briefings 1 (Dec. 2005).

39. *King County v. Sheehan III*, see note 37, supra; *Tacoma Public Library v. Woessner*, see note 37, supra.

40. *King County v. Sheehan III*, see note 37, supra.

41. *State v. Stearns*, 196 Or.App. 272, 101 P.3d 811 (2004). See also, *United America Financial, Inc. v. Potter*, note 37, supra; *State v. Sharma*, 216 Ariz. 292, 165 P.3d 693 (2007) [Individual utilized "scrambled" employee identification number along with other information to open bank accounts, obtain credit cards, and contract for utility services.].

42. *State v. Woodfall*, 120 Hawai'i 387, 206 P.3d 841 (2009).

identity theft is facilitated when birth dates are combined with other personal information.[43] Simply combining the release of a person's age along with other factors may make the individual vulnerable to those targeting a certain age range for scams.[44] With both a name and a birth date, one can obtain information about: an individual's criminal record; arrest record (which may not include disposition of the charges); driving record; state of origin; political party affiliation; social security number; current and past addresses; civil litigation record; liens; property owned; credit history; financial accounts; and quite possibly, information concerning an individual's complete medical and military histories; and insurance and investment portfolio.[45] The release of a state employee's name along with an employee identification number may provide access to other exempt personal information.[46] These same numbers may provide unauthorized access to information contained on government computers.[47]

¶ 33 This Court has acknowledged the confidential status of personal financial records.[48] The Oklahoma Legislature has recognized the rights of individual citizens to

protection from the problems arising from identity theft. It has made it a felony for "any person to willfully and with fraudulent intent [sic] obtain the name, address, social security number, **date of birth, place of business or employment**" and other information with the intent to utilize the personal identifying information for the individual's benefit.[49]

■ ¶ 34 Although the publishers disclaim any intention of publishing the birth dates of State employees, they assert that providing the date of birth information is important to their ability to identify one state worker from another. This argument has been considered too "narrow and limited" on the public interest scale to tip the balance of interests in favor of disclosure.[50] Additionally, the fact that information may be available to the public in some form or from another source does not dissolve the individual's interest in controlling the dissemination of information regarding personal matters.[51]

¶ 35 Although state employees' privacy interests may be diminished somewhat by taking a position in an agency subject to public

---

**43.** See, *Texas Comptroller of Public Accounts v. Attorney General,* note 36, supra; *Doe v. Conway,* 357 S.W.3d 505, 2010 WL 4860373 (Ky.App. 2010).

**44.** *Doe v. Registrar of Motor Vehicles,* see note 36, supra.

**45.** *Scottsdale Unified School Dist. v. KPNX Broadcasting Co.,* see note 36, supra.

**46.** *Tacoma Public Library v. Woessner,* see note 37, supra.

**47.** *King County v. Sheehan III,* see note 37, supra.

**48.** See, *Alva State Bank & Trust Co. v. Dayton,* 1988 OK 44, 755 P.2d 635.

**49.** Title 21 O.S. Supp.2007 § 1533.1 providing in pertinent part:

"A. It is unlawful for any person to willfully and with fraudulent intent [sic] obtain the name, address, social security number, date of birth, place of business or employment, debt, credit or account numbers, driver license number, or any other personal identifying information of another person, living or dead, with the intent to use, sell or allow any other person to

use or sell such personal identifying information to obtain or attempt to obtain money, credit, goods, property, or service in the name of the other person without the consent of the person....

E. Any person convicted of violating any provision of this section shall be guilty of identify theft. Identity theft is a felony offense punishable by imprisonment in the custody of the Department of Corrections for a term of not less than one (1) year nor more than five (5) years, or a fine not to exceed One Hundred Thousand Dollars ($100,000.00), or by both such fine and imprisonment. Restitution to the victim may be ordered in addition to any criminal penalty imposed by the court...."

**50.** *Clymer v. City of Cedar Rapids,* see note 36, supra; *Hearst Corp. v. State,* see note 36, supra.

**51.** *United States Dept. of Defense v. Federal Labor Relations Auth.,* 510 U.S. 487, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994); *Associated Press v. United States Dept. of Justice,* 549 F.3d 62 (2nd Cir. 2008); *Judicial Watch, Inc. v. Department of Justice,* see note 36, supra; *Tacoma Public Library v. Woessner,* see note 37, supra; *Scottsdale Unified School Dist. v. KPNX Broadcasting Co.,* see note 33, supra. See also, *Hines v. Commonwealth,* 41 S.W.3d 872 (Ky.App.2001); *Planned Parenthood*

scrutiny, they do not surrender all privacy rights by accepting government employment.[52] However, it important to note that the policy of disclosure is purposed to serve the public interest and not to satisfy the public's curiosity.[53] Here, the information sought serves no valid public interest. When balanced against the invasion of privacy sought by the publishers to obtain public employees' dates of birth and employee identification numbers, the balance must tip in favor of privacy. There simply is no instance in which we can fathom how such information would advance the public's interest in assuring that the government is properly performing its function. Therefore, we align ourselves with the reasoning of the United States Supreme Court, the majority of jurisdictions considering the issues presented, and the Attorney General and determine that, when the balancing test is applied to the facts presented, release of birth dates and employee identification numbers of State employees "would constitute a clearly unwarranted invasion of personal privacy" under 51 O.S. Supp.2005 § 24A.7 & (A)(2).

## CONCLUSION

■■■■ ¶ 36 Openness in government is essential to the functioning of a democracy. The greatest threat to privacy comes from government in secret.[54] In order to verify accountability, the public must have access to government files.[55] Such access permits checks against the arbitrary exercise of official power and secrecy in the political process.[56] It gives private citizens the ability to monitor the manner in which public officers discharge their public duties and ensures that such actions are carried on in an honest, efficient, faithful, and competent manner.[57]

■■■ ¶ 37 The purpose of openness in government is not fostered by disclosure of information about private citizens that is accumulated in various government files but reveals little or nothing about an agency's own conduct.[58] Rather, governmental agencies and the courts[59] have a special obligation to protect the public's interest in individual privacy by acknowledging that public records are being harvested for personal information about individuals, contributing to a surge in identity theft, consumer profiling, and the development of a stratified society where individuals are pigeonholed according to the electronic trail they leave of transactions that disclose personal details.[60]

■■■ ¶ 38 In enacting 51 O.S. Supp.2005 § 24A.7(A)(2), the Oklahoma Legislature sought to construct an exemption which would require a balancing of an individual's right of privacy against the preservation of the basic purpose of Oklahoma's Open Rec-

Golden Gate v. Superior Court, 83 Cal.App.4th 347, 99 Cal.Rptr.2d 627, 642 (2000).

52. Kimberlin v. Department of Justice, 139 F.3d 944, 949 (D.C.Cir.1998), cert. denied, 525 U.S. 891, 119 S.Ct. 210, 142 L.Ed.2d 173 (1998); Coleman v. Lappin, 680 F.Supp.2d 192, 199 (2010).

53. Valentine v. Personnel Cabinet, see note 36, supra.

54. California v. Greenwood, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988).

55. Data Tree, LLC v. Meek, see note 36, supra.

56. C.B.S., Inc. v. Block, 42 Cal.3d 646, 230 Cal. Rptr. 362, 725 P.2d 470 (1986).

57. Graham v. Alabama State Employees Ass'n, 991 So.2d 710 (Ala.Civ.App.2007). See also, State ex rel. Cartwright v. Oklahoma Industries Auth., 1981 OK 47, ¶ 14, 629 P.2d 1244.

58. United States Dept. of Defense v. F.L.R.A., see note 51, supra. See also, Department of Air Force v. Rose, see note 32, supra.

59. While the United States Supreme Court has expressed uncertainty regarding the precise bounds of the constitutional "zone of privacy," its existence is firmly established. At least two kinds of constitutionally-protected interests have been acknowledged. One is the interest in avoiding disclosure of personal matters. The other is the interest in independence in making certain kinds of decisions. The first of these is commonly referred to as "informational privacy." It is this aspect of privacy which is at issue here. In re Crawford, 194 F.3d 954 (9th Cir.1999), cert. denied, 528 U.S. 1189, 120 S.Ct. 1244, 146 L.Ed.2d 102 (2000); F. Chlapowski, "The Constitutional Protection of Informational Privacy, 71 B.U. L.Rev. 133 (1991).

60. In re Crawford, see note 59, supra; G. Barber, "Personal Information in Government Records: Protecting the Public Interest in Privacy," 25 St. Louis U. Pub.L.Rev. 63 (2006).

ords Act. The device adopted to achieve that balance was the limited exemption where privacy was threatened for the clearly unwarranted invasion of personal privacy.

¶ 39 We determine that the legislative language utilized in 51 O.S. Supp.2005 § 24A.7(A)(2) indicates the Legislature intended to provide a non-exclusive list of examples of information, release of which may amount to a clearly unwarranted invasion of State employees' personal privacy and that where a claim is made that disclosure would constitute a clearly unwarranted invasion of personal privacy within the meaning of the statute, application of a case-by-case balancing test is utilized to determine whether personal information is subject to release. We determine that when the balancing test is applied to the facts presented, where significant privacy interests are at stake while the public's interest either in employee birth dates or employee identification numbers is minimal, release of birth dates and employee identification numbers of State employees "would constitute a clearly unwarranted inva-

sion of personal privacy" under 51 O.S. Supp. 2005 § 24A.7(A)(2).[61]

**AFFIRMED.**

COLBERT, V.C.J., WATT, WINCHESTER, EDMONDSON, REIF, COMBS and GURICH, JJ., concur.

TAYLOR, C.J., and KAUGER, J., dissent.

KAUGER, J., dissenting, with whom TAYLOR, C.J., joins.

¶ 1 This is a matter of statutory construction. The statute involved is the human resources statute within the Open Records Act. Although the Legislature has amended 51 O.S. supp. 2005 § 24A.7 three times since its inception in 1985, it has never chosen to include the date of birth.[1] If the Legislature desires to do so, it certainly can.[2]

---

**61.** Title 51 O.S. Supp.2005 § 24A.7(A)(2), see note, supra. Although we reference federal jurisprudence, our decisions with regard to the state law questions are based on Oklahoma law which provides *bona fide*, separate, adequate and independent grounds for our decision. *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

**1.** Title 51 O.S. Supp.2005 § 24A.7 D provides:

D. Public bodies shall keep confidential the home address, telephone numbers and social security numbers of any person employed or formerly employed by the public body.

The statute was enacted in 1985, and amended in 1990, 1994, and most recently in 2005.

**2.** The legislature included date of birth in the identity theft statute, 51 O.S. Supp.2007 § 1533.1 A provides:

A. It is unlawful for any person to willfully and with fraudulent intent obtain the name, address, social security number, date of birth, place of business or employment, debit, credit or account numbers, driver license number, or any other personal identifying information of another person, living or dead, with intent to use, sell, or allow any other person to use or sell such personal identifying information to obtain or attempt to obtain money, credit, goods, property, or service in the name of the other person without the consent of that person.